## Alexandria

ADRIAN E. WISE

v.

COMMONWEALTH OF VIRGINIA

No. 0969-86

Decided April 5, 1988

COUNSEL

Barbara L. Kimble, for appellant.

Margaret Poles Spencer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

KEENAN, J. — Adrian E. Wise was convicted by a jury on three counts of robbery and one count of use of a firearm in the commission of a robbery. The issues presented in this appeal are: (1) whether the trial court erred in denying Wise's motion to suppress certain identification evidence; (2) whether the trial court erred in admitting evidence found in Wise's car several months after the offenses; and (3) whether the trial court erred in denying Wise a

jury instruction on eyewitness identification. We reverse Wise's convictions based on our finding that the trial court erred in admitting into evidence certain identification testimony.

## I.

The evidence showed that on September 27, 1985, shortly after 8:00 a.m., Pamela Wampler, Hanan Phelps, and Jeffrey Lee were robbed while working at the First American Bank in Fairfax County. Joe Woods, a bank courier, also witnessed the robbery. During their investigation, the police prepared a photographic array containing Wise's photograph. At a suppression hearing in this case, Investigator Gary Healy of the Fairfax County Police testified that on January 24, 1986, he showed a photo array consisting of six photographs to Hanan Phelps and Joe Woods. At that time neither was able to identify Wise as the robber.

Healy further testified at the suppression hearing that on February 24, 1986, he showed the same photo array to Jeffrey Lee and Pamela Wampler. On this occasion, Healy also brought a bank surveillance photograph depicting a man who had robbed a Maryland bank. Healy testified that he first showed Lee and Wampler the Maryland bank surveillance photograph and then showed them the photo array. He stated that Lee identified the man in the Maryland photo as being the man who robbed him; Wampler stated that she was eighty percent sure that he was the man who robbed her. Lee was later unable to identify the robber in the photo array. Wampler, however, made a positive identification of Wise from the photo array. Healy testified that on February 24, 1986, he also showed the Maryland bank photograph to Phelps. He stated that she identified the man in the photograph as the man who robbed her. He further testified that she then picked Wise's picture out of the photo array.

At the suppression hearing, Wise argued that the process the police used in securing the identification evidence was unduly suggestive. He further argued that the photo array identifications made by Phelps and Wampler were tainted because Healy showed them the Maryland bank surveillance photograph first. Wise moved to suppress the witnesses' identification on this basis. He also moved to exclude the gun, fake hair, and sunglasses found in Wise's car four months after the robbery on the grounds of rele-

vance, contending that no evidence connected these items to the robbery of the First American Bank. After examining the photo array and the Maryland bank photograph, the trial court denied the motion to suppress the identification evidence and denied the motion to exclude the gun, sunglasses and fake hair found in Wise's car.

At trial, neither the Commonwealth nor Wise presented any testimony regarding the Maryland bank photograph and the fact that several witnesses had seen it. The photo array, however, was received in evidence.

Investigator Healy testified at trial that on February 24, 1986, the second date that the photo array was shown to Phelps, she identified Wise's photograph. He further testified that before the array was shown to her on that occasion, Phelps told him that the robber was the man in the middle of the top row of the photo array she had seen earlier. The man in the middle of the top row was Wise. Healy also testified that when first shown the photo array one month earlier in January 1986, Phelps was unable to identify Wise. Healy further testified that Wampler was able to identify Wise when the photo array was first shown to her in February 1986.

Joe Woods testified that on the morning of the robbery, as he began to enter the bank, he was shoved from behind and pushed inside the bank. He testified that a man holding a gun ordered him to step back behind the teller's cage. Woods described the robber as being black, wearing white surgical gloves, a hat, dark clothing, sunglasses, and having a moustache that appeared to be false. In court, Woods identified Wise as the man who committed the robbery. However, on cross-examination, he conceded that another black male with a similar build and facial structure might have been the robber.

Wampler testified that about 8:20 a.m. on the morning of the robbery, she unlocked the bank door to allow Joe Woods to come inside. She stated that as Woods came in, another man pushed his way into the bank. Wampler testified that this man produced a gun and ordered her and the other tellers, Phelps and Lee, to fill a bag with money. Wampler described the robber as being about five-feet-ten inches tall, of medium build, and weighing one hundred fifty to one hundred sixty pounds. She testified that the rob-

ber was wearing a maroon jacket, a ski cap, dark pants, dark sunglasses, and a fake goatee. At trial, Wampler identified Wise as the man who robbed her.

Lee testified that the robber was a black male, approximately five-feet-ten to five-feet-eleven inches tall, of medium build, and weighing about one hundred thirty-five to one hundred forty pounds. He stated that the robber was wearing a green ski cap, sunglasses, a maroon windbreaker, surgical gloves, brown pants and a fake mustache and goatee. Phelps testified that the robber was a black male, five-feet-ten to five-feet-eleven inches tall, weighing about one hundred seventy-five pounds. She further testified that the robber wore dark glasses, a dark ski cap, a blue or maroon windbreaker, surgical gloves, and a fake mustache and goatee. At trial, both Lee and Phelps identified Wise as the individual who robbed them.

Margaret Cornell testified that her residence is approximately two and one-half blocks from the First American Bank. She stated that at about 8:00 a.m. on the morning of the robbery, while she was in her kitchen preparing coffee, she observed a young black man walking by her house. She described the man as being tall and slender, wearing a maroon windbreaker, rust colored pants, and carrying what appeared to be a rolled-up laundry bag. She testified that a few minutes later, she saw the same man return and get into a white car parked in the Saint Louis Catholic Church parking lot. Cornell identified Wise as the man she saw that day.

After the robbery, the police used a tracking dog to determine the route of the man observed by Cornell. The dog led the police from Cornell's house to the First American Bank and then to the Saint Louis Catholic Church parking lot. Officer John Brocco, the policeman who handled the dog, testified that while in the parking lot, he noticed a black furry substance on the ground. Officer Andrew Johnson later identified that black furry substance as being a fake mustache and goatee.

Investigator Hendren testified that in January, 1986, Wise was arrested on an unrelated charge. Hendren stated that subsequent to that arrest, he conducted a search of Wise's car in which he found a gun, sunglasses, and a strand of fake black hair. Wise objected to the admission of the gun, sunglasses, and fake hair

obtained from his vehicle. He argued that the Commonwealth was attempting to introduce testimony concerning another arrest and improperly introduce into evidence items discovered at the time of that arrest. Wise argued that the Commonwealth never linked the items found in his car to the robbery of the First American Bank. The trial court overruled Wise's objection.

Wise did not testify. He called Aleasha Mae Wilson as his sole witness. Wilson testified that Wise came to her house shortly after 8:00 p.m. on September 26, 1985. She further testified that he became inebriated and fell asleep. Wilson stated that Wise remained in her house throughout the night and did not leave until approximately 9:15 a.m. on September 27, 1985.

After the close of all the evidence, Wise submitted to the trial court jury instruction R which addressed the issue of the reliability of eyewitness identification testimony. Wise argued that in view of the identification testimony introduced into evidence, the jury needed to be cautioned regarding that evidence. The trial court denied the instruction, stating that it would be commenting on the evidence if it gave this instruction.

The jury returned a verdict of guilty on the three counts of robbery and the one count of use of a firearm in the commission of a robbery. Wise was sentenced to a total of twenty years incarceration for the robbery charges and two years incarceration on the firearm charge.

## II.

Wise first argues that the trial court erred in refusing to suppress the identification evidence given by Phelps and Wampler. He contends that Investigator Healy should not have shown them the single Maryland bank photograph. Wise argues that this was a suggestive presentation which denied him due process of law because it tainted the subsequent photo array and in-court identifications by these two witnesses.

The Commonwealth contends that Wise's claim is procedurally barred because the Maryland bank photograph, the subject of the allegedly suggestive identification procedure, was not admitted into evidence and was not made part of the record for this appeal. The Commonwealth also argues that even if this court is able to

review the merits of Wise's claim, presentation of the Maryland bank photograph to Phelps and Wampler did not taint their subsequent identifications of Wise.

█ Initially, we find that the absence of the Maryland bank photograph from the record before us does not bar consideration of Wise's identification claim. The record clearly shows that this single photograph of Wise was shown to Phelps and Wampler prior to their identification of him in the photo array in February 1986. We believe that significant problems are inherent in the use of a single-photograph identification procedure. In *Hudson v. Blackburn*, 601 F.2d 785 (5th Cir. 1979), *cert. denied*, 444 U.S. 1086 (1980), the court emphasized this fact, stating that "a single photograph display is one of the most suggestive methods of identification and is always to be viewed with suspicion." *Id.* at 788; *see also United States v. Cueto*, 611 F.2d 1056, 1064 (5th Cir. 1980); *United States v. Williams*, 616 F.2d 759, 761 (5th Cir. 1980). Therefore, in the case before us, since the police showed Phelps and Wampler a single photograph of Wise as part of their out-of-court identification procedure, we find the out-of-court identification process was unduly suggestive.[1]

Having found that the display of the single Maryland bank photograph to Phelps and Wampler made the out-of-court identification process unduly suggestive, we must next determine whether those identifications by Phelps and Wampler were nevertheless so reliable that no substantial likelihood of misidentification existed. *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

█ In *Biggers*, the Court held that in evaluating the reliability of a suggestive identification, the reviewing court must consider:

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confron-

---

[1] We recognize that, under different circumstances, an appellate court may be required to examine the actual photographs which form the basis of a suggestive identification claim. If, for example, one of a group of photographs is alleged to have been unduly suggestive in relation to the other photographs in that group, the appellate court may need to examine the exhibit in making its review of the trial court's ruling. This is distinguishable from the facts before us, where the actual mechanics of the procedure employed were unduly suggestive.

tation, and the length of time between the crime and the confrontation.

*Id.* at 199-200.

In the case before us, Phelps and Wampler had an opportunity to view the robber at close range for a period of three to five minutes. They both testified that they were able to focus their attention on him for most of this time. Their descriptions of the robber, however, were largely confined to his height, weight, and the clothing he was wearing. Since the robber wore a ski cap, sunglasses, and a false moustache and goatee, Phelps and Wampler were unable to give the police a description of his facial features. When first shown the photo array in January 1986, four months after the robbery, Phelps could not identify Wise as the robber. However, after she was shown the single photograph of Wise in February 1986, she told Investigator Healy, before seeing the photo array again, that she knew that the robber was the second man in the top row of the photo array she saw in January 1986. At trial, Phelps testified that she was positive that Wise was the robber. Defense counsel then asked her what had happened in the time between her previous inability to identify the robber and the date of trial that made her certain of his identity. Phelps responded: "I saw another picture, I believe, of another robbery."

Wampler was not shown the photo array in January 1986. When Healy showed her the single Maryland bank photograph in February 1986, she stated that she was eighty percent certain that the man in the photograph robbed the First American Bank. Wampler then examined the photo array and identified Wise as the robber. At trial, she made an apparent reference to the single photograph of Wise which Investigator Healy had showed her. She stated: "I mean there's just something that when I saw the picture, it clicked." Wampler also testified at trial that she was eighty percent certain that Wise was the robber.

■ In evaluating this evidence pursuant to the factors set forth in *Biggers*, we find that Phelps' and Wampler's out-of-court identifications were not sufficiently reliable for us to conclude that no substantial likelihood of misidentification existed. Initially, we note that other evidence of a defendant's guilt, not dealing with the individual eyewitness's personal observation and memory, plays no part in the analysis of the reliability of that eyewitness's

identification. *See Manson v. Brathwaite*, 432 U.S. 98, 116 (1977); *Green v. Loggins*, 614 F.2d 219, 224 (9th Cir. 1980). In the present case, both Phelps and Wampler first identified Wise five months after the robbery when shown a single photograph of him. The record shows that both witnesses were unable to describe the robber's facial features at any time prior to seeing the single photograph. Further, Phelps could not pick him out of the photo array in January 1986, one month prior to seeing the single photograph. Wampler was not shown the photo array at that time. We believe that these facts demonstrate an absence of other indicia of reliability and require us to find that the trial court erred in admitting evidence of their out-of-court identifications.

■ We turn now to examine the admissibility of the in-court identifications made by Phelps and Wampler. When a witness' out-of-court identification is ruled inadmissible, an in-court identification by that witness is still admissible if it has an origin independent of the inadmissible out-of-court identification. *Hill v. Commonwealth*, 2 Va. App. 683, 693, 347 S.E.2d 913, 918 (1986).

The testimony of Phelps and Wampler, clearly shows that their in-court identifications did not originate independently of their out-of-court identifications. Wampler was asked at trial: "Isn't it true that you are not a hundred percent sure that is him?" She responded: "In good conscience, I could never say a hundred percent. The man was wearing glasses. He was wearing a beard, and it was only three minutes, but I, in my heart, I feel it was. I mean there's just something that when I saw the picture, it clicked." We believe that this testimony indicates that Wampler's in-court identification of Wise was strongly tied to her out-of-court identification. Given the further fact that after the robbery, she could not give a description of the robber's facial features, we are unable to conclude that her in-court identification of Wise originated independently of her out-of-court identification.

Phelps testified that she identified Wise in court "from what I recollect." When asked what she recalled, Phelps mentioned his high cheekbones and said she thought she was able to see his eyes through the sunglasses. Phelps was unable, however, to remember any other facial features. Further, when defense counsel asked her why she was certain of her identification now, but was uncertain earlier, Phelps replied: "I saw another picture, I believe, of an-

other robbery." Based on our review of this testimony, we cannot conclude that Phelps' in-court identification originated independently of her out-of-court identification. We believe that her testimony specifically links her out-of-court identification of Wise with her in-court identification. Therefore, since we find that neither Wampler's nor Phelps' in-court identifications originated independently of their out-of-court identifications, we conclude that the trial court erred in admitting this evidence at trial.

We further find that the improper admission of this identification evidence was not harmless error. To be harmless, the error complained of must be harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 23-24 (1967). Juries perceive strength in numbers where eyewitness identifications are presented. We are unable to say beyond a reasonable doubt that Phelps' and Wampler's identifications did not influence the jury's decision. Joe Woods, one of the other two witnesses who identified Wise as the robber, was not unequivocal in his identification of Wise. On cross-examination, he stated that another black man of similar build and facial structure might have been the robber. Jeffrey Lee, the remaining witness who identified Wise in court as the robber, was unable to identify him in the photo array four months earlier in February 1986. Therefore, in reviewing this evidence, along with all of the other evidence in the case, we find that the trial court's erroneous admission of Phelps' and Wampler's identifications was not harmless beyond a reasonable doubt.

## III.

Although our decision necessitates reversal of this cause, we consider the remaining issues presented because they may arise again if the case is retried. Wise contends that the fake hair, the gun, and the sunglasses which were removed from his car in January 1986, should not have been admitted into evidence because they were both irrelevant and prejudicial to the case on trial. We disagree.

Evidence is relevant in the trial of a case if it has any tendency to establish a fact which is properly at issue. *See Johnson v. Commonwealth,* 2 Va. App. 598, 601, 347 S.E.2d 163, 165 (1986). When the probative value of evidence sought to be admit-

ted outweighs any prejudicial effect, and no other objection is pertinent, the evidence is admissible. *See Coe v. Commonwealth*, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986).

In the present case, the identity of the robber was at issue. All of the bank employees testified that the robber had fake facial hair, wore aviator sunglasses, and carried a small handgun. Further, Investigator Healy testified at the suppression hearing that in the five hundred robberies he had investigated over the course of his career, no more than one percent involved the use of fake facial hair. We believe that this fact makes the presence of fake facial hair in Wise's car probative of the issue of the robber's identity. In addition, the presence of all three items in Wise's car is relevant to the issue whether Wise was the robber. The fact that these items were found four months after the robbery, that Wise was not in the car at the time they were recovered, and that only one strand of fake hair was found, goes to the weight of the evidence, not its admissibility. The test establishing relevance is not whether the proposed evidence conclusively proves a fact, but whether it has any tendency to establish a fact at issue. *See Johnson*, 2 Va. App. at 601, 347 S.E.2d at 165. Therefore, we conclude that the trial court did not err when it found that these items were relevant to an issue on trial.

■ Upon finding that certain evidence is relevant, the trial court is then required to employ a balancing test to determine whether the prejudicial effect of the evidence sought to be admitted is greater than its probative value. This responsibility is a matter submitted to the sound discretion of the trial court, and will not be disturbed on appeal absent a clear abuse of discretion. *Clozza v. Commonwealth*, 228 Va. 124, 135, 321 S.E.2d 273, 280 (1984). We find no abuse of discretion in the trial court's determination that the probative value of the fake hair, sunglasses, and handgun exceeded any prejudicial effect which may have resulted from their admission.

Wise next argues that the trial court erred in refusing to grant proffered instruction R. Instruction R stated:

You have heard testimony of eyewitness identification. Identification testimony is a statement of an impression by the witness. Its reliability depends on how much of an opportunity the witness had to observe the offender at the time of the

crime and upon the circumstances under which the witness later made the identification.

You must judge the testimony of an identification witness in the same way as that of any other witness, according to the instructions I have given you, but consider in particular whether the witness had the ability and opportunity to make a reliable observation and identification.

A similar instruction was reviewed by a panel of this court in *Johnson v. Commonwealth*, 2 Va. App. 447, 345 S.E.2d 303 (1986). There, the court held that since the instruction would have had the effect of emphasizing the testimony of those witnesses who made identifications, the trial court did not err in refusing to grant the instruction. *Id.* at 457, 345 S.E.2d at 309. We believe that the reasoning employed in *Johnson* applies here. The jury was properly instructed on the Commonwealth's burden of proof and the jury's function in determining the credibility of the witnesses. We conclude that further instruction on the credibility and reliability of identification testimony was unnecessary and inappropriate, and we find that the trial court did not err in refusing instruction R.

In summary, we reverse Wise's conviction based on our finding that the trial court erred in admitting evidence of Phelps' and Wampler's in-court and out-of-court identifications of Wise. We remand this cause to the trial court for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Duff, J., and Moon, J., concurred.