COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Willis and Overton
Argued at Norfolk, Virginia


JOSE C. BLAKE, a/k/a
 JOSEPH C. BLAKE
                                    MEMORANDUM OPINION*
v.          Record No. 1849-94-1    BY JUDGE JOSEPH E. BAKER
                                         JULY 2, 1996
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                      Jerome B. Friedman, Judge
                      Alan E. Rosenblatt, Judge

               Eric W. Schwartz (George H. Bowles; Mays & Valentine,
               on briefs), for appellant.

               Monica S. McElyea, Assistant Attorney General
               (James S. Gilmore, III, Attorney General, on
               brief), for appellee.


     Jose C. Blake also known as Joseph C. Blake (appellant)

appeals from judgments of the Circuit Court of the City of

Virginia Beach (trial court) that approved jury verdicts

convicting him of two counts of robbery in violation of Code

§ 18.2-58 and two counts of use of a firearm in the commission of

a felony in violation of Code § 18.2-53.1.  Appellant was

convicted of one count of each violation in two separate jury

trials (Emrick trial and Murray trial).  On appeal from the

Emrick trial appellant argues (1) that the witness's in-court

identification of appellant was inadmissible as being

impermissibly suggestive and (2) that the trial court erred in

_____

     *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

refusing to instruct the jury with respect to the lesser-included offense of grand larceny from the person. On appeal from the Murray trial, appellant argues that the trial court erred in permitting him to be cross-examined beyond the scope of his direct examination. Finding no error, we affirm the judgments of the trial court.

## Emrick Trial

On appeal we view the evidence "in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Evans v. Commonwealth, 215 Va. 609, 612, 212 S.E.2d 268, 271 (1975). Timothy Emrick (Emrick) worked part-time as a taxicab driver. On October 23, 1993, at 7:28 p.m., Emrick was dispatched to Tivoli Apartments, Tivoli Crescent. Emrick pulled up in front of the apartment to which he had been dispatched. After waiting several minutes and as he was starting to leave, Emrick noticed two people coming from the back side of the apartments. From where he first saw the two people, it took them a "minute or less" to reach the cab. During this time Emrick was looking directly at them. As Emrick observed the two, he felt he should not "pick them up."

The two approached the passenger side of the cab and appellant knocked on the cab's front passenger-side window, stating, "Hey. You're here for us." Appellant directed Emrick to a destination.

Appellant opened the front passenger door and sat in the

front seat. The other man entered the backseat of the cab from the right rear door and sat behind appellant. As appellant entered the car, the dome light was on and Emrick had a "[c]lear line of vision" to appellant. Appellant was seated about a foot from Emrick. Emrick made an entry in his log and radioed his dispatcher that he was proceeding to the destination.

Emrick backed out of a parking space and proceeded to a stop sign. Emrick stopped at the sign and, as he was looking to the left, heard a "loud noise -- a bang." Emrick, startled, looked to his right and saw a smoking gun pointed at him. Emrick did not know if he had been shot. Appellant stated, "Give me your money." Emrick gave appellant $19 and then appellant and the other man fled, running toward the passenger side front end. The whole incident, from when appellant tapped on the window to when they fled, lasted about three minutes.

Emrick left the immediate area and notified his dispatcher. Police arrived within three to five minutes. Emrick gave the police a description of the robbers. Emrick told one of the police officers that he believed the gun used may have been a "blank" gun. When asked whether he would have given appellant money if he had not had a gun pointed at him, Emrick stated, "Probably not. I would say no."

About a week after the incident, Emrick met with the Virginia Beach Police. Emrick was shown a set of twelve photographs, including one of appellant. Emrick did not identify

appellant nor any of the other photos presented to him. Following the presentation of the photo array Emrick never spoke with the police or the Commonwealth's Attorney's office about identifying suspects.

On January 4, 1994, Emrick testified at appellant's preliminary hearing. While Emrick was testifying, appellant walked in the room and sat down at a table with his lawyer. There were no other black teenagers or people sitting with a lawyer in the courtroom. At the preliminary hearing Emrick identified appellant as one of his assailants.

Emrick testified that on the night of the incident, appellant's hair was styled similar to the way it was at the preliminary hearing and at the trial. Appellant's hair may have been a little shorter on the night of the robbery, but it was styled the same, in an Afro style. The picture of appellant that was shown to Emrick in the photo lineup was a picture of appellant with much shorter hair, almost no hair at all. At trial, Emrick was asked if he was "positive" that appellant was the person who robbed him at gunpoint; Emrick responded that there was "[n]o question about it."

Witness's Identification

Due process is violated if the pretrial identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). If an

identification procedure is deemed impermissibly suggestive, it must be determined "whether [the] identification[] . . . w[as] nevertheless so reliable that no substantial likelihood of misidentification existed."  Wise v. Commonwealth, 6 Va. App. 178, 184, 367 S.E.2d 197, 201 (1988) (citing Neil v. Biggers, 409 U.S. 188, 198 (1972)).  The factors to be considered in making this determination are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.  Id. at 184-85, 367 S.E.2d at 201.

The application of these factors to this case demonstrates that no substantial likelihood of a misidentification of appellant by Emrick existed.  Here, Emrick had the opportunity to view appellant for approximately a minute as he approached the cab.  Additionally, Emrick had the opportunity to view appellant at close range as he entered the cab and sat in the front seat next to him and as appellant faced Emrick to demand money. Emrick testified that he felt uneasy about picking up appellant and his companion and that he was looking directly at them for the entire time it took them to reach his cab, indicating that Emrick was not a passive observer.  Although not inordinately specific, Emrick's first description of appellant accurately

described appellant. Emrick stated that there was "[n]o question" that appellant was the person who robbed him. Emrick explained his inability to identify appellant from the photo array, stating that, at all times that he had contact with appellant, appellant's hair was longer and styled differently from how appellant appeared in his picture presented as part of the photo array. Finally, slightly more than two months passed between the time of the robbery and the identification; this is not an impermissibly long period of time. See Fogg v. Commonwealth, 208 Va. 541, 159 S.E.2d 616 (1968) (victim identified defendant at preliminary hearing more than two months after the crime).

## Jury Instruction

Appellant argues that the trial court erroneously refused to offer a "grand larceny from the person" instruction because the jury could have concluded that appellant effectuated the taking from Emrick without violence or intimidation. This argument is based on Emrick's statement to the police that he believed the gun appellant used may have been a gun designed to shoot blanks.

Appellant's argument is without merit. Appellant pointed a smoking gun at Emrick and demanded money. Emrick's testimony discloses that he was frightened by appellant's actions and that but for the presentation of the smoking gun, he would not have given the money to appellant. The trial court did not err when it refused to grant the instruction requested by appellant.

On October 30, 1993, James H. Murray (Murray), a delivery driver for Chanello's Pizza, made a delivery to Regency Apartments in Virginia Beach.  Murray received the call to deliver the pizza around 8:00 p.m.  As Murray drove into the parking lot, three young men approached his vehicle.  As he turned his vehicle around, they went back under the breezeway from which they had come.  Murray exited his car and was approaching the building when the three men came toward him.  As they approached, one of the men pulled out a gun and said, "Come over here.  Give me the pizza and all your money."  The man with the gun directed appellant to take the pizza and the money.  Thereafter, the man with the gun ordered Murray to leave and then shot him.  At trial Murray stated that he was "pretty sure" that appellant was the man who took the pizza and money from him.

At trial, appellant relied upon an alibi defense.  Evidence in support of appellant's alibi was introduced through the direct examination of appellant's girlfriend, Victoria Pinaro (Pinaro), his mother, Marcia Samuels, and appellant.  They testified that on the night of the robbery appellant was with Pinaro, and later with his mother, and that he was not involved in the crime.  On cross-examination, Pinaro denied previously telling the police that appellant and appellant's co-defendants, Curtis Brandon (Brandon) and Terrence Paige (Paige), visited her at her aunt's apartment on the night of the robbery.  No mention of Brandon or

Paige was made during appellant's direct examination.

On cross-examination of appellant, the Commonwealth asked appellant if he knew Brandon. Over appellant's objection, he responded in the affirmative and offered that he met Brandon at a detention home. Appellant was also asked if he knew Paige and, over objection, responded that he had met him in school "a couple of months" after the start of the school year.

On redirect, the Commonwealth called Virginia Beach Police Officer Paul C. Yoakam (Yoakam). Yoakam testified to a conversation he had with Pinaro on December 12, 1993. He stated that Pinaro told him that appellant, Brandon, and Paige visited her at her aunt's apartment on the night of the robbery, and that Paige told her that Brandon shot the pizza man. The aunt's apartment was one "court" over from the site of the shooting.

Appellant argues that the trial court erred in permitting the Commonwealth to cross-examine him on matters that exceeded the scope of his direct examination. We disagree. "When [appellant] took the witness stand and denied complicity in the offenses then on trial, he opened the door for any questions on cross-examination that the trial court, in the exercise of its discretion, might find relevant to the issue of guilt or innocence." Satcher v. Commonwealth, 244 Va. 220, 252, 421 S.E.2d 821, 840 (1992). Since appellant denied taking part in the robbery and shooting at issue, and the Commonwealth's theory of the case was that appellant and two others, namely Brandon and

Paige, perpetrated the robbery and shooting of Murray, whether appellant knew Brandon and Paige is a matter which certainly may be considered relevant to a determination of appellant's guilt or innocence.  The trial court did not abuse its discretion in presiding over appellant's cross-examination.

For the foregoing reasons, the judgments of the trial court in both the Emrick and the Murray trials are affirmed.

Affirmed.