COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Elder and
          Senior Judge Hodges
Argued at Salem, Virginia


LAWRENCE KEVIN BLEVINS
                                        OPINION BY
v.    Record No. 3170-01-3          JUDGE LARRY G. ELDER
                                      APRIL 29, 2003
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                    Jonathan M. Apgar, Judge

          Robert D. Finch, Jr. (Office of the Public
          Defender, on brief), for appellant.

          Robert H. Anderson, III, Senior Assistant
          Attorney General (Jerry W. Kilgore, Attorney
          General, on brief), for appellee.


     Lawrence Kevin Blevins (appellant) appeals from his jury

trial convictions for malicious wounding, abduction with intent

to defile and object sexual penetration.  On appeal, he contends

the trial court erroneously denied his motion to suppress (a)

the pre-trial and in-court identifications of appellant as the

assailant and (b) the evidence obtained as a result of his

encounter with a police officer near the scene of the crime.  He

also argues the trial court erroneously denied his motion for

mistrial, made after the jury had completed its service but

before the trial court imposed sentence, based on the failure of

a juror accurately to respond to voir dire questioning regarding

whether she or any member of her immediate family had "ever been

the victim of a serious crime."  We hold the trial court did not err in denying appellant's motions to suppress or his motion for a mistrial, and we affirm the challenged convictions.

I.

BACKGROUND

The victim was attacked in a parking garage by an unknown assailant as she approached her car at about 7:20 p.m. on January 16, 2001.  The assailant overpowered her and pushed her into her car.  She struggled with her attacker and honked her horn, but the assailant "beat[] [her] continuously," and she was unable to attract the attention of any passersby.  The victim was bleeding and in pain and asked the attacker to stop beating her.  Based on the assailant's superior strength and the extent of her injuries, she concluded that she would "just . . . have to cooperate with hi[m]."

Shortly thereafter, the victim saw a car coming down the ramp in the parking garage, and she renewed her efforts to sound the horn and escape.  When the approaching car slowed down and its driver "jammed on the horn," the assailant was distracted, and the bloodied victim was able to get out of her car and run to the approaching vehicle.  The assailant's attack on the victim lasted about twenty-five minutes.

Keith Weltens, the driver of the approaching car, stopped ten to fifteen feet from the victim's car and opened his passenger door for the victim.  Weltens saw the assailant step

out of the driver's side of the victim's car, stand beneath a light in the parking garage, and stare directly at him before the assailant jumped back into the victim's car. Weltens then drove the victim to a nearby hospital emergency room where he reported the crime to the police and described the attacker.

Based on a dispatch reporting the location of the attack and the description of the attacker, Christopher Atkins, a uniformed patrol officer, apprehended appellant in a nearby park less than an hour after the attack had ceased. Other officers photographed appellant and took the photo to the hospital. Appellant was arrested after both Weltens and the victim positively identified the person in the photograph as the victim's assailant.

Appellant was charged with the instant offenses. Prior to trial, he moved to suppress the fruits of his detention as the product of an unreasonable seizure. He also moved to suppress the single-photo pre-trial identifications as unduly suggestive and any subsequent in-court identifications as tainted. The court denied both motions.

After a jury trial in which appellant was convicted for the instant offenses, appellant moved the court for a mistrial. He alleged a juror failed to answer a question on voir dire honestly and that this failure prejudiced him by depriving him of a fair trial. Appellant represented that the basis for the motion was the failure of a female juror to admit that she

herself had been the victim of a robbery and that this failure was brought to counsel's attention only after the jury had returned its verdict and been discharged.

The trial court conducted a post-trial hearing at which the juror was questioned about her experience, the reason for her failure to disclose it during voir dire, and its impact on her ability to be impartial in appellant's trial. She testified her nondisclosure was unintentional and that the experience did not affect her ability to be impartial. The trial court found her testimony credible and denied the motion for mistrial.

II.

MOTION TO SUPPRESS

On appeal of the denial of a motion to suppress, we consider the evidence adduced at both the suppression hearing and the trial, DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43 (1987), and we view it in the light most favorable to the Commonwealth, Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). However, we review de novo the trial court's application of legal standards such as reasonable suspicion to the particular facts of the case. Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996).

We also review de novo the question whether a person has been seized in violation of the Fourth Amendment.  Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000).

## A.

### SEIZURE

"Fourth Amendment jurisprudence recognizes three categories of police-citizen [contacts]: (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions based upon specific, articulable facts, commonly referred to as Terry stops, and (3) highly intrusive arrests and searches founded on probable cause."  Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995) (citation omitted).

Consensual encounters "'need not be predicated on any suspicion of the person's involvement in wrongdoing,' and remain consensual 'as long as the citizen voluntarily cooperates with the police.'"  Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (quoting United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991)).  "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification."  United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980).

"A seizure occurs when an individual is either physically restrained or has submitted to a show of authority." McGee, 25 Va. App. at 199, 487 S.E.2d at 262. "Whether a seizure has occurred . . . depends upon whether, under the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave." Id. at 199-200, 487 S.E.2d at 262. Relevant factors under the "totality of the circumstances" analysis include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall, 446 U.S. at 554, 100 S. Ct. at 1877.

"[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information." Hayes v. Florida, 470 U.S. 811, 816, 105 S. Ct. 1643, 1647, 84 L. Ed. 2d 1705 (1985). In reviewing whether an officer had reasonable suspicion to justify the seizure, we must consider the "totality of the circumstances and view those facts objectively through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer." Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989).

Here, the evidence supported the trial court's implicit finding that Officer Christopher Atkins' initial encounter with appellant in the park was consensual. Atkins approached appellant on foot "at a walking pace" at a time when Atkins was the only police officer in the park. Although Atkins was in uniform, he greeted appellant by saying, in a normal tone of voice, "How are you doing?" and Atkins described his encounter with appellant as "very casual contact." In the same normal tone of voice, Atkins said to appellant, "Do you mind taking off your stocking cap for me?" Appellant complied with Officer Atkins' request. The totality of the circumstances support the trial court's implicit finding that this portion of appellant's encounter with Officer Atkins was consensual.

Once appellant complied with Officer Atkins' request to remove his hat, Officer Atkins could see that appellant had a "real short, buzz type haircut." At that time, Atkins had confirmed that appellant met the general description he had received from witness Weltens of the victim's attacker -- a white male of a certain approximate height and weight, with "facial hair that appeared to be two to three days growth," "a buzz type haircut," and "wearing a gray sweatshirt with purple fringe." The fact that appellant matched the assailant's general description, coupled with appellant's presence in the immediate vicinity of the attack only a short time after the attack had ended, gave Officer Atkins reasonable suspicion to

detain appellant briefly to confirm or dispel his suspicion that appellant might, in fact, have been the victim's assailant. See Thomas v. Commonwealth, 16 Va. App. 851, 856, 434 S.E.2d 319, 322 (1993), aff'd on reh'g en banc, 18 Va. App. 454, 444 S.E.2d 275 (1994).

When Officer Atkins turned on his flashlight, he noticed a spot of blood on appellant's head. Using his flashlight to make a closer inspection, he saw smaller red droplets around appellant's ear and scratch marks running from appellant's neck toward his chest. These observations served to heighten rather than dispel Officer Atkins' reasonable suspicion that appellant might have been the victim's attacker and justified Atkins' detaining appellant further in order to photograph him and to have the victim and witness view the photograph to confirm or dispel Atkins' suspicions. Atkins immediately called for assistance, obtained a photograph of appellant and had the photograph transported to the nearby hospital where the victim and witness promptly identified the person in the photograph as the victim's attacker. Appellant was detained no more than twenty-five minutes before the police obtained probable cause for arrest. On these facts, we affirm the trial court's conclusion that the totality of the circumstances justified the detention. Cf. id. at 857, 434 S.E.2d at 323 (holding that "[t]ransportation of a suspect a short distance for possible

identification has consistently been found reasonable and consonant with Fourth Amendment safeguards").

B.

PHOTO IDENTIFICATION

At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt. Brickhouse v. Commonwealth, 208 Va. 533, 536, 159 S.E.2d 611, 613-14 (1968). Although "'a single photograph display is one of the most suggestive methods of identification and is always to be viewed with suspicion,'" Wise v. Commonwealth, 6 Va. App. 178, 184, 367 S.E.2d 197, 200 (1988) (quoting Hudson v. Blackburn, 601 F.2d 785, 788 (5th Cir. 1979)), "[p]re-trial show-ups are not per se violative of constitutional rights," Ford v. Commonwealth, 28 Va. App. 249, 258, 503 S.E.2d 803, 807 (1998). In considering whether such an identification is inadmissible as the product of an unduly suggestive process, we look to the totality of the circumstances and consider factors including:

> the opportunity of the witness to view the
> criminal at the time of the crime, the
> witness' degree of attention, the accuracy
> of the witness' prior description of the
> criminal, the level of certainty
> demonstrated by the witness at the
> confrontation and the length of time between
> the crime and the confrontation.

Neil v. Biggers, 409 U.S. 188, 199-200, 93 S. Ct. 375, 382, 34 L. Ed. 2d 401 (1972).

- 9 -

The application of these factors to the identifications of the witness and victim support the trial court's finding that the identifications did not result from an unduly suggestive procedure. Here, the victim had ample opportunity to view her assailant during the twenty-five minute attack. When the assailant first approached the victim, his "face was touching [hers] right in [her] face," and "[they] met eye to eye" before the assailant forced her into her "two seated" car. Although the victim and her attacker struggled while in the car as she attempted to escape from him, the attack ceased when she agreed to his demands, and the assailant "became very calm." The victim's car was parked next to a light in the parking garage and her car "ha[d] [a] T-top[], so [she] was never without light during [the] attack." This evidence supports a finding that the victim had ample opportunity to view her assailant at the time of the attack.

The victim also accurately described her assailant as a short man with short hair, a goatee around his mouth that was "peppered gray," and a spot of blood on his head. Although her description of the clothing he was wearing at the time of the attack did not appear to be accurate, the victim testified that her attacker had "a very distinctive facial appearance" and that her identification of the photograph of appellant as her assailant "was based on facial appearance" and "body structure," "not . . . on the clothing in that photograph." When the police

- 10 -

asked the victim an hour after the assault if she could identify her attacker from a photograph, she said that she could.  She then identified the single photograph of appellant as her attacker, saying one photograph "was all I needed to be shown." The victim also identified appellant as her attacker at both the suppression hearing and at trial, testifying she had "[a]bsolutely no[]" doubt.  In light of the victim's level of certainty, the fact that the victim may have been told prior to viewing the photograph that witness Keith Weltens had already identified the photograph as depicting the perpetrator does not require a different result.

Weltens also had ample opportunity to view the victim's attacker, although his opportunity was of shorter duration than the victim's.  Weltens testified that the parking garage was "bright" and "well lit" and that he had a "real good" "unobstructed view" of the assailant from a distance of ten to fifteen feet for four to five seconds as Weltens sat in his car and the assailant stood beside the victim's car.  Weltens then got out of his car and viewed the assailant for an additional three to four seconds, during which the assailant was "just standing there" "staring directly at [Weltens]."

Weltens accurately described appellant's height, clothing and facial appearance, although he underestimated appellant's weight.  Weltens said that when he viewed the single photograph of appellant about an hour later, the photograph was "the exact

match" of the description he gave and that the person in the photograph was the victim's attacker.  Weltens, like the victim, testified he was "positive" that appellant was the victim's assailant.

In light of the Biggers factors, we hold the evidence supports the trial court's conclusion that the identifications were not unduly suggestive.  Our holding in Wise, cited by appellant, is factually distinguishable and, thus, does not require a different result.  See Wise, 6 Va. App. at 180, 185-86, 367 S.E.2d at 198, 201 (holding identifications were unduly suggestive where bank robber wore disguise and witnesses had been "unable to describe the robber's facial features" but claimed to have recognized accused when, almost five months after the robbery at issue, they were shown a single still photograph from a videotape of another bank robbery).  Thus, we affirm the trial court's admission of the pre-trial identifications.  Because the admission of the pre-trial identifications was not error, no basis exists for excluding the in-court identifications.

### III.

#### MOTION FOR MISTRIAL

Appellant contends he is entitled to a new trial based on a juror's failure to reveal on voir dire the fact that she had previously been robbed at gunpoint while entering her parked car.  Because the juror did not disclose this fact in a timely

- 12 -

fashion, appellant argues, he was deprived of the opportunity to challenge her for cause or, at the very least, to use a peremptory challenge to remove her from the jury.  We hold the trial court's denial of the mistrial motion was not error because the record supported the trial court's findings that the juror did not fail to answer "honestly" the questions on voir dire and that the juror was not biased.

In order for a litigant to be entitled to a mistrial based on jury misconduct on voir dire,

> "a party must first demonstrate that a juror
> failed to answer honestly a material
> question on voir dire, and then further show
> that a correct response would have provided
> a valid basis for a challenge for cause.
> The motives for concealing information may
> vary, but only those reasons that affect a
> juror's impartiality can truly be said to
> affect the fairness of a trial."

Taylor v. Commonwealth, 25 Va. App. 12, 18, 486 S.E.2d 108, 111 (1997) (quoting McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556, 104 S. Ct. 845, 850, 78 L. Ed. 2d 663 (1984)), aff'd, 256 Va. 214, 505 S.E.2d 378 (1998).

Appellant contends the juror "failed to answer honestly" the question regarding whether she had been "the victim of a serious offense" because she did not bring to the court's attention the fact that she previously had been robbed at gunpoint.  Appellant contends the juror's incorrect answer, standing alone, established dishonesty.  We disagree.  The United States Supreme Court noted in McDonough that "[t]o

invalidate the result of a [lengthy] trial because of a juror's mistaken, though honest, response to a question, is to insist on something closer to perfection than our judicial system can be expected to give."  464 U.S. at 555, 104 S. Ct. at 849-50 (emphases added) (citing Fed. R. Civ. P. 61, governing new trials, and 28 U.S.C. § 2111, "the harmless-error statute . . . [that] applies directly to appellate courts").  Thus, the Court indicated that the honesty of the juror's response is to be gauged by whether the juror gave an incorrect answer intentionally or accidentally.  Only an intentionally incorrect response may provide a basis for the granting of a mistrial. See id.  As the Supreme Court further noted,

> A trial represents an important investment
> of private and social resources, and it ill
> serves the important end of finality to wipe
> the slate clean simply to recreate the
> peremptory challenge process because counsel
> lacked an item of information which
> objectively he should have obtained from a
> juror on voir dire examination.

Id. at 555, 104 S. Ct. at 850.

Here, the trial court conducted a post-trial hearing on appellant's mistrial motion.  Smith v. Phillips, 455 U.S. 209, 215, 102 S. Ct. 940, 945, 71 L. Ed. 2d 78 (1982) (recognizing "that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias").  Upon appellate review, we must give deference to the trial court's decision regarding whether a juror is

- 14 -

impartial because the trial court "'sees and hears the juror.'" Eaton v. Commonwealth, 240 Va. 236, 246, 397 S.E.2d 385, 391 (1990) (quoting Wainwright v. Witt, 469 U.S. 412, 426, 105 S. Ct. 844, 853, 83 L. Ed. 2d 841 (1985)). Accordingly, we will disturb the trial court's decision regarding juror impartiality "only upon a showing of manifest error." Weeks v. Commonwealth, 248 Va. 460, 475, 450 S.E.2d 379, 389 (1994).

In examination by the court at the hearing on appellant's post-trial motion, the juror testified repeatedly that she did not deliberately withhold the information that she previously had been robbed. She testified that she either "didn't hear" the question or "didn't understand" and that her failure to respond correctly "was not a deliberate act."

Further, the transcript of the original voir dire indicates that the court's question to the jury, "[H]ave you or any members of your immediate family ever been the victim of a serious offense?" immediately followed a portion of the voir dire in which the trial judge had dismissed a different juror for cause, called a replacement juror, and asked only the replacement juror a series of questions to "ca[tch]" the replacement juror "up with the rest of the panel." The transcript reflects no pause in the court's questioning as it turned its attention from the replacement juror back to its questioning of the entire panel, a fact lending credence to the

challenged juror's testimony that she simply did not hear the question.

Finally, the challenged juror willingly admitted her robbery and resulting fear of parking garages to a bailiff on at least one occasion, tending to support the fact that her failure to reveal that information on voir dire in appellant's trial was unintentional. These circumstances, coupled with the juror's repeated statements that her failure to respond correctly to the trial court's question was unintentional, support the trial court's finding that she did not fail to answer a material question "honestly."

The evidence also supported the trial court's finding that the juror's personal experience as the victim of a robbery thirteen to fifteen years earlier did not affect her ability to serve impartially as a juror in appellant's trial for the instant offenses. The juror said that, although being robbed at gunpoint affected her emotionally, causing her to "relive" the robbery from time to time, she did so only when she was "by [her]self] and somebody [was] behind [her]." She insisted that "[her] verdict was strictly on the evidence, nothing about [her] personal life," and that her prior bad experience had "[a]bsolutely" nothing to do with the outcome of appellant's trial. The trial court accepted her testimony, finding she had "an impartial mind, an understanding of the presumption of innocence, and [an] indifference to the outcome."

The holdings in Cantrell v. Crews, 259 Va. 47, 51, 523 S.E.2d 502, 504 (2000), Medici v. Commonwealth, 260 Va. 223, 226-27, 532 S.E.2d 28, 30-31 (2000), and Barrett v. Commonwealth, 262 Va. 823, 826-27, 553 S.E.2d 731, 733 (2001), indicating that "public confidence in the integrity of the [jury selection] process" is an important factor in determining whether a juror should be struck for cause do not require a different result. Those cases involved challenges that occurred before the jury was sworn, which did not give rise to the same concerns for balancing fairness with finality embodied in McDonough, 464 U.S. at 553-56, 104 S. Ct. at 848-50, and recognized in Taylor, 25 Va. App. at 18 n.3, 486 S.E.2d at 111 n.3. Also, both Cantrell and Barrett involved a relationship between the challenged juror and a witness or other participant in the trial that the Court presumed would result in bias as a matter of law. Cantrell, 259 Va. at 51, 523 S.E.2d at 504 (noting juror was "a client of the law firm representing one of the parties to the litigation as a result of a similar occurrence"); Barrett, 262 Va. at 826-27, 553 S.E.2d at 733 (noting juror was brother of police officer witness). No evidence of such a relationship existed in this case.

Because the evidence supported the trial court's findings that the juror's failure to answer the subject voir dire question was accidental rather than intentional and that she

stood impartial to the cause, its denial of appellant's motion for mistrial was not error.

Finally, even assuming "misconduct" occurs when a juror unintentionally gives an incorrect response on voir dire, "'juror misconduct does not automatically entitle either litigant to a mistrial.'  The trial court must also find a probability of prejudice, with the 'burden of establishing that probability . . . upon the party moving for a mistrial.'"  Green v. Commonwealth, 26 Va. App. 394, 401, 494 S.E.2d 888, 891 (1998) (quoting Robertson v. Metropolitan Washington Airport Auth., 249 Va. 72, 76, 452 S.E.2d 845, 847 (1995)).  Based on the trial court's finding that the juror was not biased, appellant has failed to prove he was entitled to a mistrial because he failed to show prejudice.[1]

## IV.

For these reasons, we hold the trial court did not err in denying appellant's motions to suppress or his motion for a mistrial, and we affirm the challenged convictions.

Affirmed.

---

[1] Appellant alludes on brief to his constitutional right to the effective assistance of counsel.  To the extent appellant purports to raise a claim of ineffective assistance of counsel, a claim which appears somehow to be based on the juror's untruthfulness, we note that we have no jurisdiction over such claims.  See, e.g., Browning v. Commonwealth, 19 Va. App. 295, 297 n.2, 452 S.E.2d 360, 362 n.2 (1994).