COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Humphreys and Haley
Argued at Salem, Virginia


STEVEN LAWRENCE PANNELL
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2478-06-3                      JUDGE ROBERT J. HUMPHREYS
                                                         MARCH 18, 2008
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                            Joseph W. Milam, Jr., Judge

            Gregory T. Casker for appellant.

            Richard B. Smith, Special Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


       Steven Lawrence Pannell ("Pannell") appeals two separate convictions.[1]  Pannell first

appeals his conviction for burglary, in violation of Code § 18.2-89.  Pannell argues that the trial

court erred by refusing to suppress an eyewitness identification of him because it was the product

of an earlier unconstitutionally suggestive "show-up."  Pannell next appeals his conviction for

possession of a firearm by a convicted felon, in violation of Code § 18.2-308.2.  Pannell argues

that the trial court erred in refusing to suppress a gun discovered during an investigatory

---

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

       [1] On July 21, 2006, the trial court entered an order convicting Pannell of burglary.  That
conviction arose from a home intrusion that took place on October 19, 2005.  On July 27, 2006,
six days after Pannell was convicted of burglary, the trial court entered an order convicting
Pannell of possession of a firearm by a felon.  That conviction arose from a separate interaction
with police that occurred on August 17, 2005.  The trial court consolidated the convictions for
sentencing and entered one order sentencing Pannell for both crimes.  On appeal, because the
charges are otherwise unrelated, we will address each of them separately.

detention because the investigating officers did not have reasonable suspicion to stop him or frisk him for weapons.

## I. Analysis

### A. The Burglary Charge

Pannell was convicted of burglary in large part due to the eyewitness testimony of Zachary Harrelson ("Harrelson"), the victim of the crime. Harrelson saw Pannell in his house during a break-in on October 19, 2005. Later that same night, at a show-up arranged by the investigating officers, Harrelson identified Pannell as the man that broke into his house. Pannell argues that the trial court erred by refusing to suppress Harrelson's in-court and out-of-court identifications. Specifically, Pannell claims that the police used an unduly suggestive show-up identification procedure that resulted in a substantial likelihood of misidentification and irreparably tainted Harrelson's later identification of Pannell at trial. We refuse to address Pannell's argument because he failed to make a contemporaneous objection when Harrelson identified him at trial.

A person charged with a crime based on an eyewitness' identification may have the identification excluded if the procedure used to procure the identification "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." Stovall v. Denno, 388 U.S. 293, 301-02 (1967). When the defendant challenges an out-of-court identification, the identification is only admissible if "either (1) the identification was not unduly suggestive; or (2) the procedure was unduly suggestive, but the identification was so reliable that there is no substantial likelihood of misidentification." Charity v. Commonwealth, 24 Va. App. 258, 262, 482 S.E.2d 59, 60 (1997). Furthermore, even if an out-of-court identification is inadmissible, "an in-court identification by that witness is still

admissible if it has an origin independent of the inadmissible out-of-court identification." Wise v. Commonwealth, 6 Va. App. 178, 186, 367 S.E.2d 197, 202 (1988).

Before trial, Pannell made a motion to suppress Harrelson's out-of-court identification as well as any potential in-court identification that he might make at trial. The trial court denied Pannell's motion. At trial, Harrelson identified Pannell as the man that he saw break into his house and testified that he recognized Pannell from the break-in, not the show-up.

On appeal, Pannell argues only the trial court erred in admitting Harrelson's out-of-court identification. He did not claim in his brief that the trial court erred by allowing Harrelson to identify Pannell in court and conceded at oral argument that he was not challenging the admission of the in-court identification on appeal. By failing to appeal Harrelson's in-court identification, Pannell's claim that the admission of the out-of-court identification was improper is moot.

"[E]ven if evidence of the out-of-court identification cannot be admitted, an in-court identification may still be made if the origin of that identification is independent of the inadmissible out-of-court identification procedure." Hill v. Commonwealth, 2 Va. App. 683, 693, 347 S.E.2d 913, 918 (1986). In Curtis v. Commonwealth, 11 Va. App. 28, 396 S.E.2d 386 (1990), we addressed the admissibility of an in-court and an out-of-court identification. We held that the trial court erred by admitting evidence of the out-of-court identification, but we affirmed the decision of the trial court because the in-court identification was properly in evidence.

Pursuant to Curtis, if Harrelson's in-court identification is properly in evidence, we must affirm the trial court and the admissibility of the out-of-court identification is essentially irrelevant. Pannell does not claim that the trial court erred by admitting Harrelson's in-court identification. Consequently his argument that the trial court erred by admitting the out-of-court identification is moot, and we affirm the decision of the trial court.

B.  The Possession of a Firearm by a Convicted Felon Charge

On his second charge, Pannell argues that the trial court erred in refusing to suppress the gun that Officer Nicholson recovered from his waistband on August 17, 2005.  Pannell argues two separate bases as to why the gun should have been suppressed.  First, he argues that Officer Oakes initiated a traffic stop thereby seizing him without reasonable suspicion of criminal activity when she briefly turned on the lights of her patrol car.  In the alternative, he argues that even if he was not seized by Officer Oakes, he was seized by Officer Chaney and Officer Nicholson when he was pulled from his car and frisked.  Pannell further argues that seizure was not supported by reasonable suspicion of criminal activity or reasonable suspicion that he was armed and dangerous.

The Commonwealth responds that Officer Oakes did not seize Pannell and that the initial approach by Officers Chaney, Nicholson, and Rice was a permissible consensual encounter.  The Commonwealth argues further that the subsequent search and seizure were justified because, by reaching into his shirt and waistband Pannell created reasonable suspicion that he was engaged in criminal activity and that he was armed and dangerous.  For the following reasons, we agree with the Commonwealth that Pannell was not initially seized, and we disagree with Pannell that his eventual seizure was not supported by reasonable suspicion.

Determining whether a seizure has occurred and whether a frisk for weapons is constitutional is "a mixed question of law and fact."  Ornelas v. United States, 517 U.S. 690, 696 (1996); see also McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*).  Accordingly, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee, 25

Va. App. at 198, 487 S.E.2d at 261. However, we review the application of the Fourth Amendment to those facts *de novo*. See Ornelas, 517 U.S. at 691.

"Fourth Amendment jurisprudence 'has placed police-citizen confrontations into three categories.'" Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 869-70 (1992) (quoting Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988)). The first type of interactions are consensual encounters that do not implicate the Fourth Amendment. Iglesias, 7 Va. App. at 99, 372 S.E.2d at 173. The second type of interaction is a brief investigative detention or "Terry" stop. See Terry v. Ohio, 392 U.S. 1, 27 (1968). Although brief and limited in scope, a Terry stop is a seizure and "must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot." McGee, 25 Va. App. at 198, 487 S.E.2d at 261. The third type of interaction is a "full-scale" arrest or search. Id. An arrest or search "must be based upon probable cause to believe that a crime has been committed by the suspect." Id.

Pannell first argues that by activating the blue lights on her patrol car Officer Oakes seized him without reasonable suspicion. For the purposes of the Fourth Amendment, a person has been seized "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). Circumstances that might indicate a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Id.

The record in this case does not support a conclusion that Pannell had been seized when he initially arrived at the gas station. Pannell's seizure theory is that Officer Oakes made a demonstration of authority by activating the lights on her patrol car and that the driver of the

Infiniti turned into the gas station as a result of seeing those lights. Pannell contends that Officer Oakes' initial show of authority resulted in a seizure and that seizure continued through the time Officers Chaney, Nicholson, and Rice arrived and asked the driver of the Infiniti for identification. However, Pannell's theory is both factually and legally inaccurate.

Officer Chaney testified at the suppression hearing that the Infiniti had already begun to turn into the parking lot before Officer Oakes turned her lights on. Under our standard of review we must accept his testimony as true. "A seizure does not occur in the absence of physical force used by a law enforcement officer or a defendant's *submission* to an officer's assertion of authority." McCain v. Commonwealth, 261 Va. 483, 491, 545 S.E.2d 541, 546 (2001) (emphasis added). Because the driver turned into the gas station of his own volition and not in response to Officer Oakes' lights, his decision to turn into the gas station was not in submission to Officer Oakes' authority.

Furthermore, Officer Rice explained that the lights on the patrol car were only on a "split second" and that it looked like Officer Oakes may have even "accidentally" engaged the lights and immediately turned them off. When Officer Oakes turned into the parking lot she did not stop driving or approach the Infiniti. She continued around the building, out of sight. Clearly a seizure does not occur whenever a person is in the presence of flashing lights for a "split second" as a police vehicle drives past. Nothing about Officer Oakes's conduct would lead a reasonable person to believe that they were not free to leave.

In fact, the record is clear that Pannell and the driver believed that they were free to leave. After parking next to a gas pump both men exited the Infiniti and attempted to patronize the gas station. The driver of the Infiniti testified that he walked around the building trying to get into the gas station for "two or three minutes" before the other officers arrived. The driver even testified that he felt that he was free to leave. Under those circumstances, we hold that the

- 6 -

men were not seized when they initially parked at the gas station; no reasonable person would believe that they were not free to leave.

Nor were the men seized when Officers Chaney, Nicholson, and Rice arrived at the gas station. When the other officers arrived at the gas station, they did not activate the siren or the light on their car and did not block the Infiniti from leaving. The officers were not in police uniforms, and their weapons were not drawn. Two of the officers approached the driver without identifying themselves as police officers and asked him for identification. The Fourth Amendment is not implicated when police officers "approach[] individuals on the street or in other public places and put[] questions to them if they are willing to listen." United States v. Drayton, 536 U.S. 194, 201 (2002). The officers merely approached the driver and asked him a question. Their encounter, at least initially, was consensual.

However, the consensual nature of the encounter soon changed. As Officers Rice and Chaney initiated conversation with the driver, Officer Nicholson saw Pannell take his hands and put them under his shirt. Officer Nicholson immediately asked Pannell, "Please get your hands up. Please get your hands up." Pannell did not put his hands up and continued reaching under his shirt. At that point, Officer Nicholson drew his gun while continuing to yell to Pannell to put his hands up. Officer Chaney ran to the car, opened the passenger door, pulled Pannell out of the car, and laid him on the ground. Officer Chaney frisked Pannell for weapons, feeling what he believed to be a gun in the waistband of Pannell's pants. Officer Chaney reached under Pannell's shirt and discovered a gun in his waistband. Pannell claims that seizure was illegal because the officers did not have reasonable suspicion to believe that he was engaged in criminal activity or that he was armed and dangerous.

As stated earlier, a police officer must, at a minimum, have a reasonable, articulable suspicion that criminal activity is afoot in order to seize a suspect. During a Terry stop, if the

- 7 -

officer reasonably believes that the suspect "'may be armed and presently dangerous,'" he may conduct "a limited search of the suspect's outer clothing for the purpose of discovering weapons." Simmons v. Commonwealth, 217 Va. 552, 554, 231 S.E.2d 218, 220 (1977) (quoting Terry, 392 U.S. at 30).

When Officer Nicholson saw Pannell look at the officers questioning his companion, reach into his waistband, and refuse to show his hands when asked, it was reasonable for Nicholson to believe that Pannell was reaching for a gun. See Welshman v. Commonwealth, 28 Va. App. 20, 35, 502 S.E.2d 129, 130 (1998) (holding that a man's refusal to show his hands at the request of a police officer gave the officer reasonable suspicion that the man was armed). In Virginia, it is a crime to carry a concealed firearm without a permit. Code § 18.2-308. Once Officer Nicholson had a reasonable suspicion that Pannell was concealing a gun, it was also reasonable for him to suspect that Pannell might be concealing that gun in violation of Code § 18.2-308. Officer Nicholson's reasonable belief that Pannell was concealing a gun gave him reasonable suspicion that Pannell was engaged in criminal activity and that he was armed and dangerous. Under Terry, the officers were then entitled to detain Pannell to investigate and frisk him for their safety. Terry, 392 U.S. at 30. Because the stop and frisk were proper, the trial court did not err in refusing to suppress the gun that Officer Chaney discovered during the frisk.

## II. Conclusion

For the reasons stated above, we hold that the trial court correctly denied Pannell's motion to suppress Harrelson's in-court and out-of-court identifications and affirm his conviction for burglary. We also hold that that trial court correctly denied Pannell's motion to suppress the gun discovered by Officer Chaney during the stop and frisk, and affirm his conviction for possession of a firearm by a felon.

Affirmed.