# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Anthony Talbert

April 12, 2012

Case No. 12-031

BY JUDGE EDWARD L. HOGSHIRE

Defendant Anthony Talbert, having been indicted for unlawful possession of marijuana and for breaking and entering with the intent to commit larceny, has filed a Motion to Suppress the out-of-court identification by the alleged victim. Defendant alleges that this identification procedure, following the discovery of a photo identification card bearing his picture at the scene, was unduly suggestive and violated his rights as guaranteed under the Fifth Amendment to the U.S. Constitution and Article I, Section 11, of the Virginia Constitution. The motion was heard *ore tenus* on March 6, 2012. Having considered the evidence presented, along with legal memoranda and the arguments of counsel, for the reasons stated below, the Court will deny Defendant's Motion to Suppress.

*Statement of Facts*

The facts adduced at the evidentiary hearing revealed that, at approximately noon on November 10, 2011, Kenneth Martin encountered a man in the back room of his home. *Motion Hearing Transcript*, 9-10, March 6, 2012. When Martin walked into the back room, he was fearful that his elderly mother had fallen or otherwise needed his assistance. *Id.* at 11. Instead, he observed that an apparent intruder had entered his home and fallen to the floor about ten and a half feet away from where Martin stood. Martin testified that he observed the intruder as he lay on the floor for at least three seconds before the intruder fled from the home. *Id.* at 10-13. Martin, who was wearing contact lenses at the time, saw the intruder's

face and observed his physical appearance during this timeframe, noting that it was sunny and well-lit in the back room at that time. *Id.* at 10, 12, 14. Martin immediately called the police and, when Officer Ronald Roberts showed up about ten minutes later, Martin gave him a "general description" of the intruder. *Id.* at 13, 14. He described the intruder as "black, that he was young . . . he was medium brown [in complexion]," that he was "five seven" in height, and was of medium build. Martin described the intruder's face as being of "medium width, that he had fairly prominent cheek bones . . . he did not have a longish face, but it was not a fat face either." He could not determine the intruder's hair color because he "had on a baseball cap," but did observe the intruder wearing a red and white-colored, short jacket. *Id.* at 14, 15, 17.

Officer Roberts left after taking note of Martin's description, but returned around fifteen minutes later with a state-issued Virginia identification card he had found outside near Martin's driveway. *Id.* at 7, 16-17. Officer Roberts showed the identification card to Martin and asked him if this was the individual that Martin had seen in his home. *Id.* at 16, 32-33. Notably, Officer Roberts did not mention to Martin how or where he found this identification card. Furthermore, it should be noted that Martin testified that he was not wearing his reading glasses when he observed the identification card. *Id.* at 35. In response to Officer Roberts' question, Martin replied that he "could not be 100% sure," but that it could be "either he or his brother." *Id.* at 17, 34. The officer then told Martin that the man in the identification card was five seven, the height matching Martin's previous description. *Id.* at 22. Prior to this exchange, Martin was not told where the identification card had been found. In fact, Martin did not learn that the card was found on his property until later in the investigation. *Id.* at 22-23. Approximately one hour after the interview with Martin, Officer Roberts obtained an arrest warrant for the Defendant, whose address was listed on the identification card. *Id.* at 38.

## Issue Presented

The question presented is whether the single photo identification procedure used by the police in this case was unduly suggestive and improper so as to outweigh the reliability of the witness's out-of-court identification of the Defendant.

## Analysis

Defendant first argues that the single photograph procedure used by Officer Roberts was unduly suggestive. The Defendant argues that the framing of the Officer's question unduly suggested to the witness that the photograph was one of the intruder. In addition, the Defendant argues

that the out-of-court identification was sufficiently unreliable to cause a substantial likelihood of mistaken identification, naming the following significant factors: (1) the witness saw the intruder for only three seconds; (2) that the witness was not wearing reading glasses when he was shown the photograph ID; (3) the original description given to Officer Roberts was vague; (4) unlike his testimony at the hearing in court, the witness expressed some uncertainty about his identification out of court. The Commonwealth counters that the single photograph identification was not unduly suggestive, since the witness had no context for the photograph and was not told where or when it was found. Furthermore, the Commonwealth argues that, even if the identification is suggestive, the reliability of Martin's identification outweighs any suggestiveness.

Unduly suggestive out-of-court identifications are inadmissible under both the Fifth Amendment to the U.S. Constitution and Article I, Section 11, of the Virginia Constitution. But challenges to the identification procedure will fail if "either (a) the identification was not unduly suggestive," or (b) even if the procedure was suggestive, "the identification is nevertheless so reliable . . . that there is no substantial likelihood of misidentification." *Miller v. Commonwealth*, 7 Va. App. 367, 373 (1988) (quoting *Hill v. Commonwealth*, 2 Va. App. 683, 693 (1986)). In determining the reliability of an identification, courts must use a totality-of-the-circumstances test. The factors to consider include "the opportunity of the witness to view the criminal at the time of the incident, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness, and the length of time between the crime and the witness' opportunity to view and identify the alleged criminal." *Barnes v. Commonwealth*, 2008 WL 5130198, *2 (Va. App. Dec. 9, 2008).

Single photograph identification procedures are highly disfavored since a single-photograph display is "one of the most suggestive methods of identification and is always to be viewed with suspicion." *Blevins v. Commonwealth*, 579 S.E.2d 658, 664-65 (Va. App. 2003). Given this presumption against the single photograph identification method, the crux of the analysis will focus on the reliability of Martin's identification. *Id. See also Rountree v. Commonwealth*, 2007 WL 2088685, *1 (Va. App. July 24, 2007).

In assessing the reliability of the witness' out-of-court identification in this case, several facts are relevant. First, Martin had a full view of the intruder's face, his clothing, and his person for three seconds. He was standing ten and a half feet away from the intruder, and he presumably had normal vision since he was wearing contact lenses at the time. Secondly, Martin had initially walked into the back room of his home expecting to find his mother, not a stranger, and feared his mother had been injured or in need of assistance. This expectation, combined with the inherent

stress of finding a stranger in his home, heightened Martin's degree of attention to the intruder. In addition, Martin's detailed description of the intruder's clothing, only minutes after the encounter, demonstrated that he was paying close attention to the physical characteristics of the intruder's person. Thirdly, Martin's prior description of the intruder matched the overall physical description of the Defendant, including the Defendant's exact height. This description was provided within minutes of viewing the stranger in his home and before he had seen the photo on the identification card. Fourthly, Martin was reasonably certain of his identification of the Defendant, telling the officer at the scene that the photograph was a picture of either the intruder or his "brother." Lastly, the encounter in the home occurred less than one hour from the witness's out-of-court identification of the Defendant.

Under the totality of the circumstances test described in *Barnes v. Commonwealth*, this witness' out-of-court identification in the case at bar is sufficiently reliable to outweigh the suggestiveness of Officer Roberts' single-photograph display. The short time difference between the crime and Martin's identification, as well as his detailed memory of the encounter and of the intruder's personal characteristics, lend much weight to the reliability of this identification. While only observing the intruder for a few seconds, this witness was able to get a sufficient view of the intruder's face, the same face that he saw on the state-issued identification card.

Significantly, while Martin's identification passes the muster of the totality of the circumstances test, it also outweighs the suggestive nature of the single photograph procedure used by Officer Roberts. While the officer did prompt the witness about whether this photograph was of the intruder he encountered earlier, the officer did not inform the witness where he found the photograph or provide any other information that would encourage Martin to identify this Defendant. Hence, while using this one photograph was suggestive, Officer Roberts did not present the photograph to the witness in an unduly or overly suggestive manner. Accordingly, the out-of-court identification of the Defendant in this case was of more than sufficient reliability to overcome any taint of suggestiveness.

On the grounds set forth above, Defendant's Motion to Suppress will be denied.