COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges AtLee, Causey and Senior Judge Haley
Argued at Richmond, Virginia


HECTOR ENRIQUE VALENTIN LOYOL

MEMORANDUM OPINION[*] BY
v.        Record No. 0816-21-2            JUDGE RICHARD Y. ATLEE, JR.
JULY 26, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

Jose E. Aponte (BainSheldon, PLC, on brief), for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of the City of Richmond ("trial court") convicted

appellant Hector Enrique Valentin Loyol of aggravated malicious wounding, in violation of Code

§ 18.2-51.2(A), and stabbing in the commission of a felony, in violation of Code § 18.2-53.  On

appeal, Loyol argues that the evidence is insufficient to support his convictions.  For the following

reasons, we disagree and affirm his convictions.

I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial."  *Gerald v.*

*Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

(2016)).  In doing so, we discard any conflicting evidence and regard as true all credible

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

evidence favorable to the Commonwealth and all fair inferences that may reasonably be drawn from that evidence. *Id.* at 473.

In the early morning of July 5, 2020, Sergeant Brian Wilson of the Richmond Police Department was dispatched to a strip mall in the 1800 block of Broad Rock Boulevard. When he arrived, he found an individual, later identified as Jayron Och Hub, bleeding from the neck, lying on the sidewalk in front of a club called Mi Rancho. Sergeant Wilson, who was the second officer on the scene, asked questions to try and locate witnesses and secured the scene for forensics. Officers discovered a bloody knife and a cell phone in an empty parking space in front of a laundromat in the same strip mall as Mi Rancho. Richmond Police Detective James Higgins collected surveillance videos from the laundromat and a market, also in the same strip mall.

The market's surveillance tape showed several individuals arriving at Mi Rancho. Those same individuals later left Mi Rancho with Hub. The laundromat's surveillance video showed the incident causing Hub's injuries. In the video, four individuals, including Hub, were talking and standing around next to a white Dodge pickup truck. At some point, a person in a black shirt briefly scuffled with Hub. But afterward, they all continued talking. Then an individual in a white hat, who was leaning on the truck, reached into his pocket and handed something to a person in a white t-shirt. The person in the white hat then walked around to get into the truck. The person in the white t-shirt brought his hand down and a glinting object is visible in his right hand. He then raised his hands and the object to Hub's neck, which caused a scuffle. Hub fell to the ground, and the individual in the white t-shirt jumped over him and got in the white pickup truck before it drove off.

At trial, Hub testified that he was drinking at Mi Rancho on July 4, 2020. While at the bar, Hub saw Jervin, his former roommate, and Loyol, whom he had met once before. Hub remembered leaving the bar at around 12:15 a.m., but he did not remember how he was injured. Hub testified that he only remembered approaching the Mi Rancho security guard and asking for help because his

neck was injured. The Commonwealth showed Hub still photographs made from the surveillance videos. Hub was able to identify himself and others in the photos. He testified that he was the individual wearing a red sweatshirt, Jervin was the individual wearing a black t-shirt, and Loyol was the person wearing a white t-shirt.

Hub did not have an injury to his neck before this incident, and after the attack he was hospitalized for two weeks. Because of his injury, Hub's voice changed, and his voice is prone to getting tired. Hub explained that he cannot breathe well and constantly needs to drink water. On cross-examination, Hub admitted that Jervin evicted him from the residence they shared because of his relationship with Jervin's young daughter.

Richmond Police Detective Greg Russell also reviewed the surveillance videos and identified German Rodenzo Lopez from the videos and still photographs as the man in the white hat. Additionally, Detective Russell obtained the listed number for the recovered cell phone and subpoenaed T-Mobile for the subscriber's name and address. The phone number was registered to Loyol at a Washington, D.C. address.

In September 2020, Detective Russell located Loyol at his job site in Washington, D.C. Loyol admitted that he was in Richmond on July 4 and that he had been in a white pickup truck. Detective Russell opened a file, intending to find a picture of the truck, and on top there were still pictures of one of the suspects (the person in the white t-shirt) from the video. Loyol spontaneously identified himself in the picture, stating, "That's me, that's me," while pointing at the picture.

On November 6, 2020, Detective Russell arrested Loyol in Washington, D.C., advised him of his *Miranda*[1] rights, and brought him back to Richmond. On the way, Loyol explained that he had been drinking on the day of the incident and had no recollection of the incident. Loyol acknowledged he had met Rodenzo and Jervin, both of whom were friends of his niece's husband,

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

while in Richmond. When asked, Loyol admitted to speaking with Rodenzo and Jervin after the incident. Both Rodenzo and Jervin had told him that he was guilty, but he could not remember doing anything. Despite not remembering anything, Loyol showed remorse through multiple comments he made. He stated, "poor young man," "I never should have hurt him," "I don't know why this happened," and "[i]f I hurt the victim, I regret it and I ask God for forgiveness." Loyol also identified the phone found at the scene as his.

Dr. Jonathan Bennett testified that when Hub arrived at the hospital, he had two large stab wounds that caused heavy bleeding. During exploratory surgery, Dr. Bennett noted bleeding from superficial jugular veins and a hole in Hub's trachea, and he considered the injury life-threatening as Hub started to aspirate blood. Dr. Bennett stated that Hub's scars are permanent and the hoarseness in Hub's voice will likely last for another year.

Upon the conclusion of the Commonwealth's evidence, Loyol made a motion to strike, arguing that because the posters on the front glass of the laundromat obstruct the view of the encounter, the exact moment when the stabbing occurred cannot be seen. He argued it could have occurred when Jervin, who had a previous falling out with Hub and a motive to harm him, struggled with Hub against the truck. The trial court denied the motion.

In a renewed motion to strike incorporated into his closing argument, Loyol asserted that no DNA or fingerprint evidence linked him to the crimes. He again emphasized that the stabbing was not visible on the videos and that he only joined the fight after Jervin and Hub had already started struggling. He argued that because the posters in the laundromat window obstructed the view of the altercation, it is unclear who possessed the knife when the lacerations occurred. He asserted that it is possible that Jervin, who had a motive to harm Hub, committed the stabbing, thus establishing a reasonable doubt as to Loyol's guilt. The trial court denied the renewed motion to strike.

Before pronouncing the verdict, the trial court highlighted the exchange between Rodenzo and Loyol just moments before the incident. Rodenzo pulled an object out of his pocket and handed it to Loyol, who was resting his hand on the truck near Rodenzo. When Loyol's hand reappeared in view of the camera, there was a knife in his hand. The trial court emphasized that the knife appeared to be the same length as the knife recovered from the scene. Therefore, the trial court was convinced that it was Loyol that committed the stabbing. Accordingly, it found Loyol guilty of the crimes charged. Loyol now appeals to this Court.

## II. ANALYSIS

Loyol argues that the evidence is insufficient to convict him of aggravated malicious wounding and stabbing in the commission of a felony. We disagree.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

Code § 18.2-51.2(A) provides,

> If any person maliciously shoots, stabs, cuts or wounds any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill, he shall be guilty of a Class 2 felony if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment.

Code § 18.2-53 provides, "If any person, in the commission of, or attempt to commit, [a] felony, unlawfully shoot, stab, cut or wound another person he shall be guilty of a Class 6 felony." Loyol does not dispute that Hub was stabbed or that Hub suffered injuries sufficiently serious to meet the statutory definition. Rather, he challenges whether the evidence was sufficient to show that it was him that stabbed Hub.

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). But "[o]ur inquiry does not distinguish between direct and circumstantial evidence, as the fact finder . . . 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). "[C]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Sarka v. Commonwealth*, 73 Va. App. 56, 67 (2021) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

Here, there was sufficient evidence from which a rational factfinder could have determined that Loyol stabbed Hub. The market surveillance video showed Loyol, Jervin, and Rodenzo enter Mi Rancho and then leave with Hub. Both Loyol and Hub identified Loyol as the person in the white t-shirt. The laundromat surveillance video shows the four men conversing next to a white Dodge pickup, which Loyol admitted to being in.

- 6 -

Although flyers on the window obstruct part of the incident in the video, the video is nevertheless sufficient to show what occurred. Jervin forced Hub against the side of the pickup truck while Loyol and Rodenzo moved closer. Rodenzo pulls something out of his pocket and hands it to Loyol. When Loyol brings his right hand down, a long glinting object is seen in his hand.[2] Rodenzo then walked around the truck, got in, and slowly started backing it out of the parking space. At the same time, Loyol grabbed Hub and appeared to raise the knife to Hub's neck. Hub fell to the ground after a brief struggle. Loyol jumped over Hub and climbed into the truck as Rodenzo drove away. Jervin tried to get in the truck, but he fell out as the truck pulled away. Hub got up and walked back to the bar with his hand to his neck and blood soaking his shirt.

Loyol argues that it was Jervin who had problems with Hub, not him. He also argues that the video was grainy and did not clearly show what happened. But the video shows that Hub was still standing after the initial scuffle with Jervin and did not appear injured. And immediately after Loyol raised the knife to Hub's neck, Hub fell to the ground. Jervin's hand and body position at that point in time indicate that he could not have stabbed Loyol.

Additionally, while Loyol's statements may not have been direct confessions, they can certainly be considered as circumstantial evidence of his guilt. Although he claimed he could not remember what happened, Loyol expressed remorse and stated that he should not have hurt Hub. *Parham v. Commonwealth*, 64 Va. App. 560, 567 (2015) ("The fact finder was entitled to . . . infer that the appellant's inconsistent statements were additional evidence of his guilt.").

---

[2] At oral argument, defense counsel indicated that the trial court was hesitant to conclude that Loyol stabbed Hub because of the grainy videos and stills. But the trial court initially hesitated because the still photo of the object in Loyol's hand did not match the actual knife in evidence. After reviewing the surveillance video again, however, the trial court realized that the still photos taken from the surveillance video were distorted. The object in Loyol's hand, when reviewed in the video, matched the knife in evidence, and the trial court was then convinced beyond a reasonable doubt that it was the knife in Loyol's hand.

A reasonable factfinder could have viewed the evidence and concluded that Loyol stabbed Hub. "By finding [a] defendant guilty . . . the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017) (first alteration in original) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). Therefore, we will not disturb the trial court's finding on appeal.

## III. CONCLUSION

Because the evidence was sufficient to convict Loyol of both aggravated malicious wounding and stabbing in the commission of a felony, we affirm his convictions.

*Affirmed.*