# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges O'Brien and Causey
Argued at Lexington, Virginia


CURTIS BENJAMIN HARRELL, III

                                        MEMORANDUM OPINION[*] BY
v.        Record No. 0737-23-1        JUDGE DORIS HENDERSON CAUSEY
                                           NOVEMBER 6, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Stephen J. Telfeyan, Judge

Meghan Shapiro, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Curtis Benjamin Harrell III was convicted in a bench trial of possession of cocaine and

for driving after the forfeiture of a license, third offense within ten years.  The trial court

sentenced him to 8 years imprisonment, with 5 years and 18 months suspended.  On appeal,

Harrell challenges the trial court's denial of his motion to suppress based on an alleged illegal

seizure of his person.  Harrell also challenges the sufficiency of the evidence for his conviction

on the ground that the Commonwealth did not prove that he operated a motor vehicle on a public

highway.  Finding that the police had reasonable suspicion to investigate Harrell's possible

criminal activity and that the evidence was sufficient to prove that he drove his car on a public

road, we affirm.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

On December 12, 2019, Chesapeake Police Officers Daniel Taylor and Jonathan Mills were working in coordination with Chesapeake vice and narcotics officers near 2424 Gum Road as part of a drug interdiction operation in that area. After Taylor and Mills received information from a nearby narcotics squad that a black pickup truck suspected of illegal drug activity was traveling on Gum Road, they saw a black Ford 350 series pickup truck being driven on Gum Road. Taylor believed that the driver was the only occupant in the truck. At the time Taylor could not identify the driver "by name," partly because the windows on the truck had "a darker tint on it." Taylor saw the driver's face as the pickup truck drove on Gum Road.

The officers saw the truck pull into a private driveway and then go into an adjoining church parking lot next to a hotel called "Studios & Suites 4 Less" located at 2424 Gum Road. Taylor saw the truck driving erratically, describing observing the truck "come into the parking lot. It accelerated quickly backward, and it ran over one of the parking curbs in the parking lot, and then it went forward and came back over the parking curb in the parking lot." Taylor also noticed that the truck's windows "appeared to be darker than the legal limit."[2] In the driveway, the driver spoke with a woman who was walking into the hotel. After Taylor saw the truck pull into the driveway, he drove the police car to the parking lot; no more than a minute elapsed while the truck was out of sight.

---

[1] In criminal appeals challenging the sufficiency of the evidence, we recite the evidence below in the light most favorable to the Commonwealth, the prevailing party at trial. *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[2] The instant offense occurred in 2019, prior to the General Assembly amending Code § 46.2-1052 to state that the window tinting offense cannot serve as a basis for a traffic stop.

Taylor and Mills parked their police car 30 to 40 yards from the truck. The officers' car did not block the truck, and they did not activate their lights or siren in any way that would indicate a pursuit or attempted pursuit. As they walked to the truck, the officers saw Harrell get out of the driver's seat to look at the truck's tires. No one else got out of the truck. Taylor approached to investigate Harrell's suspected drug activity and possible impairment from alcohol or drugs as well as to determine whether the window tint on the truck complied with the legal limit. Mills obtained Harrell's name and date of birth and ran a records check, which disclosed that Harrell's driver's license had been revoked. Approximately seven minutes elapsed from the start of the encounter. Mills arrested Harrell for the driving offense and advised him of his *Miranda*[3] rights.

Meanwhile, Sergeant Clinton Rombs was positioned as part of the drug interdiction operation near 2424 Gum Road. Rombs testified that he received a police dispatch about a drug transaction at a gas station "just around the corner of the 2424 Gum Road." That transaction involved a female, whom Rombs then observed walk from Gum Road into the parking lot of the hotel where she approached and briefly spoke with the driver of the pickup truck. Harrell was in the driver's seat and was the sole occupant of the truck. The driver was a "white male." When the female walked away, Harrell drove away from the hotel. As Rombs drove into the driveway, he "passed" the pickup truck as it left. Rombs stopped the female and discovered that she had crack cocaine. Within five to ten minutes after Rombs had seen Harrell driving from the Studios 4 Less parking lot, Rombs returned to the church parking lot where he discovered that Taylor and Mills had arrested Harrell. The truck was the same one that Rombs had seen traveling on Gum Road. Harrell was about 50-100 yards from where Rombs had seen Harrell's encounter with the female.

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Rombs K-9 drug detection dog alerted to the pickup truck. Mills then searched the truck and found what appeared to be crack cocaine in the pocket of the driver's door.[4] The pocket also contained business cards from Harrell's business, which had his name on them. During the encounter Taylor tested the truck's window tint and determined that it was not legally compliant.

After his arrest, Harrell told Rombs that he had bought two grams of crack cocaine from a man identified as "Red" in the stairwell of the hotel. Harrell let Rombs look through his cellphone, and the officer came upon text messages between Harrell and Red. In one text Harrell told Red that he was "at Home Depot, about to roll out." Red replied, "what do you need?," to which Harrell responded, "Would you do 2 G for 140." Red answered "150."

Testifying as an expert at the trial, Rombs stated that Harrell's query about doing "2 G for 140" was "consistent with asking for two grams of narcotic for $140." Red's response of "150" was "consistent with $150, which [was] also consistent with a price of two grams of cocaine on the street." Rombs concluded from the texts that Harrell was coming from a Home Depot to buy two grams of cocaine. The nearest Home Depot was about a mile from Gum Road.

Mills determined that the pickup truck was a company vehicle. Taylor testified that he asked Harrell after his arrest whether anyone else drove the truck. Harrell replied that the other employees of his business had been laid off and that he "was the only individual that was rendering service for the company."[5]

---

[4] Analysis of the substance later determined that it contained about 2.36 grams of cocaine.

[5] We note that Harrell filed a previous appeal in this Court in which, in part, he challenged the admission of his statement as a *Miranda* violation. While rejecting other claims on the merits, this Court held that Harrell had waived his *Miranda* claim, for failure to brief it as required under Rule 5A:20(e). *See Harrell v. Commonwealth*, No. 0197-22-1, slip op. at 3-4 (Va. Ct. App. Nov. 22, 2022) (per curiam). On April 10, 2023, this Court granted Harrell leave to file a delayed appeal on four other assignments of error, based on the failure to file indispensable transcripts in the initial appeal. This record makes clear that the admissibility of any of Harrell's statements is not reviewable in the present appeal.

ANALYSIS

Harrell challenges his detention and subsequent search and seizure on the ground that the police lacked specific, articulable facts to support an investigative detention. Additionally, Harrell argues that the evidence was insufficient to prove he operated a vehicle on a public highway. The record, when viewed in the light mandated on appeal, demonstrates otherwise and we affirm.

A Fourth Amendment claim challenging a search and seizure "'presents a mixed question of law and fact that we review *de novo* on appeal.'" *Cauls v. Commonwealth*, 55 Va. App. 90, 95 (2009) (quoting *Grandison v. Commonwealth*, 274 Va. 316, 320 (2007)). "The defendant has the burden to show that, considering the evidence in the light most favorable to the Commonwealth, the trial court's denial of his suppression motion was reversible error." *McCain v. Commonwealth*, 275 Va. 546, 552 (2008). "On appeal, we state the facts 'in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences.'" *Hill v. Commonwealth*, 297 Va. 804, 808 (2019) (quoting *Commonwealth v. White*, 293 Va. 411, 413 (2017)). Additionally, we consider both the evidence presented at the suppression hearing and the evidence adduced at trial. *Id.*

Settled principles govern review of Harrell's Fourth Amendment claim. "Fourth Amendment jurisprudence recognizes three categories of police-citizen [contacts]: (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions based upon specific, articulable facts, commonly referred to as *Terry*[6] stops, and (3) highly intrusive arrests and searches founded on probable cause." *Blevins v. Commonwealth*, 40 Va. App. 412, 420-21 (2003) (alteration in original) (quoting *Wechsler v. Commonwealth*, 20 Va. App. 162, 169 (1995)), *aff'd*, 267 Va. 291 (2004). Mere "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." *INS v.*

---

[6] *Terry v. Ohio*, 392 U.S. 1 (1968).

*Delgado*, 466 U.S. 210, 216 (1984). Likewise, "[a]n encounter between a law enforcement officer and an individual does not lose its consensual nature when the officer merely identifies himself, states that he is conducting an investigation, and asks the individual to identify himself." *Roberts v. Commonwealth*, 55 Va. App. 146, 152 (2009).

The initial encounter between Harrell and Officers Taylor and Mills was consensual. First, we note that the police did not stop Harrell's truck. On the contrary, when Taylor parked the squad car, Harrell already was outside his truck examining the tires. The officers did not activate their lights or siren and stopped their car 30 to 40 yards from Harrell's truck. The police car did not block the truck's egress from the parking lot. Taylor's body-worn camera footage depicted the approximate seven minutes between the officers approaching Harrell and then arresting him for driving on a revoked license. The video recording of their interactions shows that, much as in *Blevins*, Taylor initially spoke to Harrell "in a normal tone of voice," and their exchange amounted to "very casual contact." 40 Va. App. at 422. Indeed, defense counsel referred to "the several minutes of basically nothingness that took place" in the footage. Harrell initially was cooperative and provided his name and date of birth to Taylor and Mills. The fact that Harrell continued to examine his tires for about a minute as he spoke with Taylor underscored the consensual, non-coercive nature of their initial encounter. Thus, we conclude that the initial part of the encounter was consensual and did not implicate the Fourth Amendment.

We need not determine whether the encounter lost its consensual nature before Harrell's arrest. We hold that the circumstances justified a brief detention, pursuant to *Terry*, to investigate Harrell's suspected drug trafficking and erratic driving as well as the possibility that the tint on his windows was illegally dark. A stop under *Terry* is constitutional so long as the

officer has a reasonable, articulable suspicion that criminal activity may be afoot or potentially is about to occur. *Hill*, 297 Va. at 811-13.[7]

Taylor offered three justifications for speaking with Harrell: (1) his possible drug trafficking as indicated in the police dispatch; (2) his possible drug or alcohol impairment based on his erratic maneuvers in the parking lot; and (3) the fact that the windows of the truck might be too dark to comply with legal standards. In denying the motion to suppress, the trial court credited Taylor's testimony. The court found that Taylor's testimony concerning "the tinting, the suspected drug activity, and the erratic behavior in the parking lot" justified "an investigation of possible criminal conduct." On brief, Harrell analyzes each of these proffered justifications individually, but we have stressed that in conducting a *Terry* analysis a court must examine *all the attendant circumstances*. "We are expressly forbidden to view any fact 'in *isolation*, rather than as a factor in the totality of the circumstances.'" *Turay v. Commonwealth*, 79 Va. App. 286, 298 (2023) (en banc) (emphasis added) (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 60 (2018)).

The collective circumstances here warranted a brief investigative *Terry* stop. First, the pickup truck that Taylor observed on Gum Road squared with the information from other officers regarding the appearance and whereabouts of the vehicle that had engaged in a suspected narcotics transaction. *See Long v. Commonwealth*, 72 Va. App. 700, 716 (2021) ("one officer is entitled to rely upon the reasonable suspicions of his or her fellow officer"). This Court stated in

---

[7] A Fourth Amendment seizure of a person "occurs either by physical force or submission of the person to the assertion of law enforcement authority." *Hill*, 297 Va. at 811 (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). Thus, in *Hill* the Supreme Court held that the officers' repeated directives to the defendant to "show his hands" was not a seizure, given his continued noncompliance. *Id.* at 810. The officers' commands "did not, by themselves, result in a seizure because Hill never submitted to this assertion of authority." *Id.* at 811. Instead, as the Supreme Court held, "the detectives did not seize Hill until the moment they physically placed their hands on him and pulled him from the vehicle." *Id.* at 812.

*Turay* that "geographic and temporal proximity to the reported criminal activity is vital." 79 Va. App. at 300. Thus, in *Blevins* the fact that the defendant's "general description, coupled with [his] presence in the immediate vicinity of the attack only a short time after the attack had ended" provided reasonable suspicion to detain him for 25 minutes to investigate his possible role in the attack. 40 Va. App. at 422-23.

The officers' observation that Harrell, for no apparent reason, drove over parking curbs twice in the parking lot added to the reasonableness of the investigative stop. The video footage of the encounter demonstrates that several times Taylor asked Harrell if he had been drinking. The fact that the truck was possibly involved in drug trafficking also suggested the possibility that Harrell had driven so erratically because he was eager to get away from the site of the drug sale outside the hotel.

Finally, the officers' observation of the dark tint on Harrell's truck sufficed to justify a *Terry* stop. *See Tarpley v. Commonwealth*, No. 1364-22-1, slip op. at 4-5, 2023 Va. App. LEXIS 787, at *5-7 (Nov. 21, 2023) (*Terry* stop to investigate legality of tinted windows was valid even though testing showed they were legal); *Prunty v. Commonwealth*, No. 2074-00-1, slip op. at 8-9, 2001 Va. App. LEXIS 401, at *9 (July 3, 2001) (officers had reasonable suspicion to stop defendant's car to investigate legality of tinted windows).[8] *See also Mason v. Commonwealth*, 291 Va. 362, 371 (2016) (officer's observation of parking pass hanging from rear view mirror supported *Terry* stop to investigate possible violation of obstruction-of-view statute). Harrell asserts that the record does not reflect "that Taylor noticed the window tint until after" he was detained. Viewing the record in the light most favorable to the Commonwealth, we conclude that Taylor noticed the tint as he observed the truck traveling on Gum Road. Taylor testified that

---

[8] Unpublished decisions, while not binding, may "be cited and considered for their persuasive value." *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012). *See also* Rule 5A:1(f).

when he saw the truck on the road, he was unable to identify the driver "by name," partly because of the dark tint on the windows. And when Taylor approached Harrell's truck in the parking lot, he again saw the dark tint, which he subsequently confirmed was illegal. As discussed above, the mere fact that the officers approached Harrell did not amount to a seizure or otherwise implicate the Fourth Amendment. Taylor's observations of the tinted windows of the pickup truck both on Gum Road and as he approached the already stopped truck in the parking lot warranted a brief investigative inquiry. Consistent with *Hill*, Harrell was not seized until Mills arrested him seven minutes after the encounter began (a period significantly shorter than the 25-minute detention upheld in *Blevins*).

Harrell also challenges the sufficiency of the evidence on his driving on a suspended license conviction, arguing that the evidence did not prove that the pickup truck Taylor saw on Gum Road was the same one in the parking lot or that Harrell had operated the truck on a public highway. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations

in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

The trial judge found as fact that the evidence proved it was Harrell who was driving the pickup truck that the officers saw on Gum Road and who had then driven it into the parking lot where Taylor and Mills encountered him.[9] The record supports that finding. Shortly after receiving the information about a black pickup truck possibly involved in drug trafficking and traveling on Gum Road, Taylor saw a truck on that road matching the information from other officers. The driver of the truck appeared to be its sole occupant. Taylor saw the truck pull into a private driveway and then to the adjoining church parking lot next to the hotel. There, Taylor saw the driver speak with a woman and then drive the truck twice over curbs in the parking lot. At that point, Taylor drove to the lot, and no more than a minute passed while the truck was not in sight. Harrell was the only person near the truck when the officers approached him, and there were no other vehicles or individuals in the parking lot. At the time, Harrell was looking at the tires. The truck was a company vehicle, and Harrell was the only person currently driving it for his business.

Additionally, Rombs saw a woman speak with a white male driver in the truck in the hotel parking lot. Rombs saw the woman walk away and the truck leave the lot. Rombs initially followed the woman, passing the pickup truck in the process, but within five to ten minutes he

---

[9] Harrell does not contend that Gum Road was not a "highway" within the meaning of Code §§ 18.2-272(A) (driving on a suspended license) or 46.2-100 (definitional statute).

returned to the church parking lot.  At that point, Mills had already arrested Harrell.  The truck was the same one Rombs had seen on Gum Road.

This collective evidence amply supported the trial court's finding of fact that Harrell had driven the pickup truck on Gum Road and then into the parking lot where Taylor and Mills very shortly thereafter encountered him.  Harrell's assertion that Taylor merely saw Harrell "with the truck in a private lot an unclear length of time after purportedly seeing the same truck on the public road" cannot be squared with viewing the evidence in the light most favorable to the Commonwealth.  *Hill*, 297 Va. at 808.  And Harrell's own words, which he does not mention or address on brief, confirm the sufficiency of the evidence.  The text messages between Harrell and a man named "Red" started just before 10:00 a.m. about a possible sale of cocaine, and Harrell said he was at a Home Depot "about to roll out."  Rombs took a picture of the text messages at 11:16 a.m.  Rombs testified that the nearest Home Depot was about one mile away and opined that the texts indicated Harrell was coming from a Home Depot to buy two grams of cocaine.  Thus, the evidence proved Harrell illegally operated a vehicle on a public highway.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*