UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Causey, Lorish and White
Argued at Salem, Virginia


CURTIS RAY SPURLOCK

                                              MEMORANDUM OPINION* BY
v.        Record No. 0288-23-3              JUDGE DORIS HENDERSON CAUSEY
                                                     JUNE 4, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF WYTHE COUNTY
Josiah T. Showalter, Jr., Judge

Andrew J. Harman for appellant.

Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the Circuit Court of Wythe County convicted Curtis Ray Spurlock of

2 counts of rape of a child under the age of 13, 2 counts of object sexual penetration of a child under

the age of 13 by someone 18 years of age or older, 2 counts of sodomy of a child under the age of

13 by someone 18 years of age or older, 2 counts of indecent liberties with a child by a custodian,

and 2 counts of aggravated sexual battery.  Spurlock asserts on appeal that the trial court erred in

finding that the evidence was sufficient to support his convictions.  For the reasons below, we hold

that the evidence is sufficient and affirm Spurlock's convictions.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

From the age of seven years old to the age of nine years old, K.A.H.[2] lived with Spurlock, her biological father, in a trailer home in Barren Springs, Virginia. The trailer had two bedrooms. K.A.H. shared a bedroom with her younger sister, A.H. Their two brothers also lived with them.

K.A.H. and A.H. testified at trial by closed circuit video. K.A.H. testified that while she was living with Spurlock, he touched her and her sister inappropriately on their female body parts with his hand and his "pecker." She testified that he touched inside her and her sister's "vajayjays" with his "pecker." Spurlock also made K.A.H. touch his penis with her hand. K.A.H. also testified that Spurlock assaulted the girls in the shower and in the bedroom and that she had witnessed him assaulting her sister, A.H. K.A.H. testified she experienced pain and fear when Spurlock put his penis in her vagina. K.A.H. testified that these things happened at least twice a week and began happening after Spurlock's mother moved out of the home and continued until K.A.H. and A.H. were removed from the home.

K.A.H. was eventually able to tell her adoptive mother, Kimberly LeeAnn Harris (LeeAnn), about the assaults in May 2020. K.A.H. testified that she could not keep it back anymore and told LeeAnn that Spurlock was sexually touching them.

A.H. testified at trial that Spurlock was her biological father and that she previously lived with him. A.H. testified that Spurlock would whip them sometimes but denied anything happening to her in the bathroom.

---

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). On appeal, we discard any of appellant's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Id.* at 473.

[2] We use initials, instead of the children's names, in an attempt to better protect their privacy.

LeeAnn was K.A.H.'s and A.H.'s adoptive mother and had fostered the children. LeeAnn knew that Spurlock was the children's biological father and identified him at trial. When the sisters came to live with her, LeeAnn became concerned about K.A.H. wetting the bed almost every night. A.H. also often wet her pants. LeeAnn asked K.A.H. about it, and she told LeeAnn about the sexual assaults. K.A.H. told LeeAnn that she and her sister were assaulted in the trailer; they were both made to touch "his penis" with their hands "as well as have it in their mouth[s]," either in the bedroom or the shower. LeeAnn did not ask A.H. any questions about the abuse because she realized she needed to immediately report the incidents. LeeAnn reported the events to John Mitchell, the children's social worker. LeeAnn took both girls to be interviewed and examined by a nurse practitioner.

Louise Ferguson was a supervisor with Child Protective Services (CPS) in Wythe County. Ferguson was familiar with Spurlock from two separate investigations. Ferguson received a report that two children in foster care had been sexually abused by their prior caretaker while they lived in Wythe County. The address in Wythe County where the children lived at the time of the abuse was on Crawford Road in Barren Springs. CPS investigated the incident and interviewed the children.

Sergeant Chris Terry with the Wythe County Sheriff's Office investigated the offense. At the time, Spurlock was living in Barren Springs and was 39 years old. Sergeant Terry testified that the two victims lived with Spurlock at that address. Sergeant Terry received the original complaint, spoke with LeeAnn, and eventually obtained charges on Spurlock after the victims were interviewed by Denise Wallace.

Wallace was a forensic interviewer and counselor at the Children Advocacy Center of Highlands Community Services. Wallace testified as an expert in forensic interviewing and described her standard interviewing techniques and practices. Wallace interviewed K.A.H. and A.H. on May 15, 2020, after they were referred to her by the Wythe County CPS. The interviews

were recorded and admitted into evidence at trial as Commonwealth's Exhibit 2 and played for the jury. During A.H.'s interview, she stated that Spurlock, her father, used to beat the sisters. When Wallace asked A.H. to tell her about living with Spurlock, A.H. responded, "oh you don't want to hear this." A.H. said, "there was some nasty things," that happened between her and her father.

A.H. appeared to nod and grimace when Wallace asked her if Spurlock touched parts of her body. A.H. indicated that Spurlock had touched her private parts, specifically her "bad spot," which was her vagina on the drawing. A.H. said that Spurlock's hand touched her vagina and moved, and she demonstrated with the "fidgets" in her hands. A.H. said that Spurlock made her and her sister shower with him and that he put A.H. on his lap with no clothes on and his penis went into her vagina, and it felt like "a crab was pinching it." A.H. said Spurlock made her touch his penis with her hand. A.H. also said that Spurlock touched his penis to her bottom.

During K.A.H.'s interview with Wallace, she said she used to live with her biological father, Spurlock, in a trailer between Hillsville and Pulaski, Virginia. K.A.H. indicated that Spurlock touched her and her sister, A.H., on their private parts at Spurlock's home. K.A.H. also indicated through the drawings that Spurlock had forced K.A.H. to sit on his penis more than once. K.A.H. said that Spurlock made her and her younger sister touch him and he would touch them, including touching his penis, multiple times a week. K.A.H. said that Spurlock told her that if she told anyone, he would hunt her down and she would regret it. K.A.H. also said that Spurlock made the sisters take showers with him. K.A.H. saw Spurlock sit down and he would make A.H. sit on his lap and A.H. repeatedly said, "ow." K.A.H. indicated this happened more than one time and conveyed with the drawings that Spurlock touched both A.H.'s butt and vagina with his penis.

K.A.H. said that Spurlock's "thingy" went inside her "cooch," and he did it to A.H. as well, more than once. K.A.H. said that once Spurlock used the end of a hammer to touch A.H, saying that it touched A.H.'s "cooch," and that Spurlock would "move [the hammer up] and then move it

- 4 -

back down," making a pushing motion with her hands. K.A.H. also said that Spurlock's mouth touched her body. K.A.H. said first it happened to A.H. and then K.A.H., when they were seven and four years old; and the last time was a few days before they left his home.

Kathy Harrington was a pediatric nurse practitioner at Fort Chiswell Medical Clinic, and she was certified as a sexual assault nurse examiner. Harrington testified at trial as an expert in sexual assault nurse examining with an emphasis in pediatrics. Harrington examined A.H. on May 18, 2020. At the time, A.H. was seven years old and disclosed that her dad, Spurlock, had "slapped [her] back, hurt [her] leg, he hurt [her] coochie pop and she explained that that was the name for her private area." While A.H. showed a normal vaginal exam, her rectal examination was abnormal. A.H.'s rectal tissue had "fundalling," which is where the lines of the tissue are very smooth, and the opening was immediately open to five centimeters. Harrington testified that rectal sodomy was the primary cause of the findings in A.H.'s exam. Harrington's interpretation of the exam based on A.H.'s medical history was that sexual abuse was highly suspected. A.H. told Harrington she had had "penetration or contact with the anal area by penis," "[b]y a finger," and "[b]y an object," and that she had pain in the area associated with this contact. A.H. also told Harrington that she had been touched in the vaginal area by a penis, fingers, and an object, and that she had pain in the area associated with this contact.

Harrington also examined K.A.H. on May 18, 2020. K.A.H. was ten years old at the time and told Harrington that her "bio dad" "hurt me and my sister, Curtis Spurlock hurt me in the front and she indicated the general area and where I poo from." Harrington testified that K.A.H. told her that she had "vaginal contact or penetration by the penis" and "[b]y the finger," and that she had pain in the area associated with this contact. K.A.H. also told Harrington she had "[a]nal contact or penetration by penis," "[b]y finger," and "[b]y object," and that she had pain in the area associated with this contact. She also indicated her father had fondled her genitals. K.A.H. was talkative, but

had a history of behavior changes, wetting her pants, poor sleep, and depressed behavior. K.A.H.'s rectal exam was normal, however there was thickening and irregularity to her hymen which Harrington suspected was caused by sexual abuse because of the verbal history.

Spurlock moved to strike the charges at the conclusion of the Commonwealth's evidence. Spurlock argued that the Commonwealth had failed to prove his age or the victim's ages, arguing that their dates of birth were necessary to prove their ages. Spurlock also argued that the victims had not sufficiently identified him because they did not identify him in court. Spurlock also argued there was "no evidence yesterday regarding any cunnilingus, fellatio, anilingus, or any other anal intercourse." Spurlock argued, "There's no objects, there's no sodomy. There's no evidence of rape." Spurlock argued that there were inconsistencies with the children's interviews and testimony.

The circuit court made lengthy comments about the testimony that demonstrated the victims sufficiently identified Spurlock and that multiple witnesses testified to the victims' age. The trial court ultimately overruled the motion and the renewed motion to strike.

## ANALYSIS

Spurlock asserts that the trial court erred in finding the evidence sufficient to support his conviction. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting

*Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

## I. Jurisdiction

Spurlock alleges that the evidence was insufficient to prove that the offenses occurred in the Commonwealth of Virginia and "therefore the Circuit Court did not have jurisdiction to try the accusations before it." We disagree.

"Jurisdiction is authority to hear and determine a cause, or it may be defined to be the right to adjudicate concerning the subject matter in the given case." *Porter v. Commonwealth*, 276 Va. 203, 230 (2008). Code § 19.2-239 grants the circuit courts jurisdiction in criminal cases for "all presentments, indictments and information for offenses committed within their respective circuits." Code § 17.1-513 provides the circuit courts with jurisdiction over all felonies committed in the Commonwealth. *See Thomas v. Commonwealth*, 36 Va. App. 326, 330 n.1 (2001).

"Generally the prosecution of a criminal case shall be had in the county or city in which the offense was committed." *Pollard v. Commonwealth*, 220 Va. 723, 725 (1980) (citing Code § 19.2-244). "[T]he burden is upon the Commonwealth to prove venue by evidence which is either direct or circumstantial." *Id.* (quoting *Keesee v. Commonwealth*, 216 Va. 174, 175 (1975)). "Such evidence must furnish the foundation for a 'strong presumption' that the offense was committed within the jurisdiction of the court." *Id.*

The evidence sufficiently establishes that the court had proper jurisdiction. K.A.H. testified that when she was living with Spurlock, he inappropriately touched her and her sister on their female body parts. She also testified that she lived with Spurlock "[i]n Barren Springs" in a "light bluish" "trailer." Sergeant Terry testified that these crimes were reported to him and he investigated

the "report" regarding K.A.H. and A.H. He testified that this "report" was communicated to him in May 2020 and that at that time, "Spurlock was living in Wythe County at 104 Crawford Road in Barren Springs here in Wythe County" "with . . . the two alleged victims, [A.H.] and [K.A.H.]." This evidence sufficiently creates a "strong presumption" that the criminal conduct took place in the Commonwealth of Virginia. We will not disturb this finding on appeal.

## II. Ages of Spurlock, K.A.H., and A.H.

Spurlock further contends that the circuit court erred in denying his motions to strike because the evidence was insufficient to prove the age of Spurlock and the age of both minor victims. Again, we disagree.

"In *Jewell* [*v. Commonwealth*, 8 Va. App. 353 (1989)], this Court set forth the standard for determining whether a defendant meets or exceeds a particular statutory age." *Stith v. Commonwealth*, 65 Va. App. 27, 31 (2015).

> [T]he rule set forth in *Jewell* envisions two categories of cases: (1) those where it is obvious from the defendant's appearance that he or she meets or exceeds the statutory age and (2) those where it is not obvious whether the defendant meets or exceeds the statutory age. This Court in *Jewell* explained that, for the first type of cases, a factfinder may rely on the defendant's physical appearance by itself when arriving at its conclusion regarding the defendant's age. [8 Va. App. at 356.] For the second type of cases, where it is less obvious whether a defendant meets or exceeds a statutory age, corroborating evidence is necessary and the factfinder may *not* rely solely on a defendant's physical appearance to arrive at a determination regarding the defendant's age. *Id.* The Court in *Jewell* found that determining which type of scenario is applicable is a question for the trial court and factfinder.

*Id.* at 33. In *Stith*, the Court held that "the trial court did not err when it relied only on its own observations of appellant's physical appearance to determine that there was sufficient evidence to prove beyond a reasonable doubt that appellant was over the age of sixteen when he committed the offense." *Id.* at 36. Thus, physical appearance alone may be sufficient to establish a defendant's age for offenses that specify that a defendant, to be guilty, needs be over a certain age. Spurlock

gives no authority for his proposition that to establish age, actual date of birth is controlling. *See Mitchell v. Commonwealth*, 60 Va. App. 349, 351 (2012) ("Based on appellant's counsel's failure to cite sufficient legal authority in support of appellant's argument on brief, we find that appellant has waived review of this issue and decline to address it.").

Here, the jury could observe Spurlock's appearance to determine his age, and that he was clearly over 18 years old and thus also over 18 years old at the time of the offenses. Additionally, there was corroborating evidence of his age. Sergeant Terry testified that when he investigated this case, Spurlock was 39 years old.

For the age of the victims, the same rationale applies. First, both victims testified during trial that they were under the age of 13. K.A.H. testified that she was 12, and A.H. testified that she was 9. K.A.H also testified to her exact birthdate on cross examination. Moreover, the jury could observe the victims' appearances from their video interviews. As the criminal conduct occurred before trial, clearly both victims were under the age of 13 at the time of the offenses.

### III. Identity of Perpetrator

Spurlock further argues that the circuit court erred in denying his motions to strike because the Commonwealth failed to have the victims identify, beyond a reasonable doubt, Spurlock as the person who committed the crimes.

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003), *aff'd on other grounds*, 267 Va. 291 (2004). On appeal, we review the trier of fact's determination regarding the identity of the criminal actor in the context of "the totality of the circumstances." *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002) (quoting *Satcher v. Commonwealth*, 244 Va. 220, 249 (1992)). "It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is

sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)).

Here, the evidence establishes, beyond a reasonable doubt, that Spurlock was the perpetrator. K.A.H. testified that "Curtis Spurlock" is her biological father and that when she was living with him, he inappropriately touched her and her sister on their female body parts. LeeAnn testified that she was K.A.H.'s and A.H.'s adoptive mother and that she knows who their biological father is. She testified that their biological father is Curtis Spurlock and made an in-court identification of Spurlock. Ferguson also made an in-court identification of Spurlock as the person she had investigated regarding his relationship with his children. Sergeant Terry, who investigated the crimes here, also made an in-court identification of appellant as the "Spurlock" he investigated. Based on the totality of the circumstances, this evidence sufficiently establishes Spurlock's identity as the perpetrator.

## IV. Elements of the Offenses

Finally, Spurlock argues that the circuit court erred in denying the motions to strike because each and every element of all offenses were not proved beyond a reasonable doubt. There are ten total counts of which Spurlock was convicted—two counts of five different offenses.

"It is well established that, '[w]hen the sufficiency of the evidence is challenged on appeal, we determine whether the evidence, viewed in the light most favorable to the prevailing party, the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense.'" *Flanagan v. Commonwealth*, 58 Va. App. 681, 700 (2011) (alteration in original) (quoting *Haskins v. Commonwealth*, 31 Va. App. 145, 149-50 (1999)). At the outset we note, as discussed above, that the evidence

established that the victims were less than 13 years of age and that Spurlock was over 18 years of age at the time of the sexual conduct.

### A. Two Counts of Rape

Code § 18.2-61(A) provides, in relevant part, that "[i]f any person has sexual intercourse with a complaining witness . . . and such act is accomplished . . . (iii) with a child under age 13 as the victim, he or she shall be guilty of rape."

The evidence here establishes the elements of rape for both victims. The evidence sufficiently establishes that Spurlock had sexual intercourse with K.A.H. and A.H. K.A.H. testified that while she was living with Spurlock, he touched her and her sister inappropriately on their female body parts. K.A.H. testified during trial that Spurlock touched inside her and her sister's "vajayjays" with his "pecker." K.A.H. said that Spurlock's "thingy" went inside her "cooch," and he did it to A.H. as well, more than once. Harrington testified that K.A.H. told her that she had "vaginal contact or penetration by the penis" and pain in the area associated with this contact. Harrington also testified that the results of A.H.'s rectal exam were abnormal and that she believed that sexual abuse was highly suspected. Harrington also testified that K.A.H.'s exam showed thickening and irregularity to her hymen, which she suspected was caused by sexual abuse. Thus, the evidence sufficiently established that Spurlock raped both victims.

### B. Two Counts of Object Sexual Penetration

A person is guilty of animate object sexual penetration if he penetrates the labia majora or anus of a complaining witness with an object, other than for a bona fide medical purpose, and the complaining witness is less than 13 years of age. Code § 18.2-67.2. Under this statute, "[a] finger is an animate object." *Bell v. Commonwealth*, 22 Va. App. 93, 98 (1996).

Here, the evidence sufficiently establishes the elements of object sexual penetration of both victims. A.H. told Wallace that Spurlock's hand touched her vaginal area and moved. K.A.H.

- 11 -

testified in court and told Wallace that Spurlock touched her and her sister on their female body parts with his hand. K.A.H. said that once Spurlock used the end of a hammer to touch A.H, pushing it into her vagina. Harrington also testified that K.A.H. told her that she had "penetration or contact with the anal area" "[b]y a finger" and "[b]y an object" and that she had pain in the area associated with this contact. A.H. also told Harrington that she had "penetration or contact with the anal area, [b]y a finger" and "[b]y an object," and that she had pain in the area associated with this contact. Thus, the evidence was sufficient to convict Spurlock on two counts of object sexual penetration.

C. Two Counts of Forcible Sodomy

"An accused shall be guilty of forcible sodomy if he or she engages in cunnilingus, fellatio, anilingus, or anal intercourse with a complaining witness . . . and . . . [t]he complaining witness is less than 13 years of age." Code § 18.2-67.1(A).

Here, the evidence sufficiently establishes that Spurlock committed forcible sodomy on both victims. K.A.H. testified that Spurlock inappropriately touched her and her sister on their female body parts when they were living with him. Harrington testified that K.A.H. told her that K.A.H. had "[a]nal contact or penetration by penis" and that she had pain in the area associated with this contact. Harrington also testified that A.H. told her that A.H. had "penetration or contact with the anal area by penis" and that she had pain in the area associated with this contact. Harrington explained that A.H. had a "very abnormal rectal exam[]," "a very obviously abnormal opening to her rectum," of which "rectal sodomy is the primary cause." Harrington also testified that K.A.H. told her that when the girls were living in a trailer, they were made to have a penis in their mouths. This evidence is sufficient to establish the elements of forcible sodomy.

D. Two Counts of Taking Indecent Liberties with Child
by Person in Custodial or Supervisory Relationship

Under Code § 18.2-370.1(A):

> Any person 18 years of age or older who . . . maintains a custodial or
> supervisory relationship over a child under the age of 18 and is not
> legally married to such child and such child is not emancipated who,
> with lascivious intent, knowingly and intentionally . . . sexually
> abuses the child as defined in subdivision 6 of § 18.2-67.10 is guilty
> of a Class 6 felony.

Under Code § 18.2-67.10(6)(a), "Sexual abuse" is defined as "an act committed with the intent to sexually molest, arouse, or gratify any person, where: [t]he accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts." Moreover, under Virginia law, a person must be at least 18 years old to marry unless a minor has been emancipated by court order.[3] Code § 20-48.

In this case, the evidence sufficiently establishes that Spurlock had a supervisory relationship with the victims, was not married to either, and sexually abused them. K.A.H. testified that she and A.H. lived part-time with Spurlock and their brothers. She also testified that Spurlock is her biological father. This evidence sufficiently establishes that Spurlock had a supervisory relationship with the victims, as he is their father and the victims lived with him. *Cf. Sadler v. Commonwealth*, 276 Va. 762, 765-66 (2008) (concluding that evidence that "at the time of the incident the victim was a member of a traveling softball team coached by Sadler" sufficiently established that Sadler had "a custodial or supervisory relationship with the victim as required by Code § 18.2-370.1"). Furthermore, Spurlock could not have been legally married to either victim because they were too young to be married or emancipated under Virginia law.

---

[3] A minor cannot petition for emancipation until the minor has reached their sixteenth birthday. Code § 16.1-331.

- 13 -

The evidence also sufficiently establishes that Spurlock sexually abused the victims as defined by statute. K.A.H. testified that Spurlock inappropriately touched her and her sister with his hand on their female body parts when they were living with him. Harrington testified that K.A.H. told her that K.A.H. had vaginal contact "by the finger." Harrington also testified that A.H. told her that A.H. had "general touch in the vaginal area." Thus, the evidence sufficiently establishes that Spurlock had a supervisory relationship with the victims, was not married to them, and sexually abused them, which sufficiently supports his convictions for taking indecent liberties with a child by a custodian.

## E. Two Counts of Aggravated Sexual Battery

Under Virginia law, "[a]n accused shall be guilty of aggravated sexual battery if he or she sexually abuses the complaining witness, and . . . [t]he complaining witness is less than 13 years of age." Code § 18.2-67.3. In Section IV.D., above, we define "sexual abuse" under Code § 18.2-67.10(6) and conclude that the evidence sufficiently establishes that Spurlock sexually abused K.A.H. and A.H. We also hold above that K.A.H. and A.H. were under the age of 13 during both trial and at the time of the offenses. Thus, the evidence here sufficiently establishes that Spurlock committed aggravated sexual battery against the victims.

## CONCLUSION

The evidence sufficiently establishes that (1) the circuit court had jurisdiction over the offenses, (2) Spurlock was over the age of 18 and K.A.H. and A.H. were under the age of 13 at the time of the offenses, (3) Spurlock was the perpetrator, and (4) the Commonwealth established every element of the offenses.

*Affirmed.*